## GOODLOE V. STATE OF INDIANA.

[No. 30, 535. Filed September 19, 1967.]

*Forrest Bowman, Jr.,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Edgar S. Husted,* Deputy Attorney General, for appellee.

JACKSON, J.—This matter comes to us by way of appeal from a conviction on a charge, by affidavit, of entering to commit a felony. Trial was had to the court without the intervention of a jury, trial by jury having been specifically waived. At the conclusion of the State's evidence, both the State and appellant rested. The court found the appellant guilty as charged at the conclusion of the trial on November 14, 1963, and set December 9, 1963, as the date for sentencing appellant, and on said date pronounced sentence in accordance with his findings.

The statute on which the affidavit herein was based is found in Acts 1941, ch. 148, § 5, p. 447, § 10-704, Burns' 1956 Replacement, and reads as follows:

"Whoever enters any dwelling-house, or other place of human habitation, business-house, outhouse, shop, office, storehouse, warehouse, mill, distillery, pottery, factory, barn, stable, schoolhouse, church, meeting-house, or any building used for religious worship, booth, tent, inclosed ginseng garden, boat, wharf-boat, or other water-craft, car, factory, freight house, station-house, depot, railroad-car, interurban or street-car, or any other erection or inclosure, with the intent to commit a felony therein, shall, on convic-

tion, be imprisoned for not less than one [1] year nor more than ten [10] years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

The affidavit on which appellant was tried reads in pertinent part as follows:

". . . personally came JOHN ADAMSON who, being duly sworn, upon his oath says that LAWRENCE GOODLOE on or about the 9th day of May, A.D., 1962, at and in the County of Marion in the State of Indiana, did then and there unlawfully and feloniously enter the Office of IN-DIANA HEART ASSOCIATION INCORPORATED A NOT FOR PROFIT CORPORATION, then and there situate at 615 NORTH ALABAMA STREET, City of Indianapolis, County of Marion, State of Indiana, with the intent to commit a felony therein, to-wit: to unlawfully and feloniously take, steal and carry away the personal goods, chattels and property belonging to the said INDIANA HEART ASSOCIATION, INCORPORATED A NOT FOR PROFIT CORPORATION, then and there being . . . contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The defendant-appellant entered a plea of not guilty to the charge embraced in the affidavit.

The finding of the court in pertinent part reads as follows:

"And this cause having been submitted to the Court for trial, finding and judgment without the intervention of a Jury and the Court having heard the evidence and argument of counsel finds the defendant guilty as charged of Entering to commit a Felony."

The court set December 9, 1963, for sentencing and on said date entered judgment and sentence herein as follows:

"Come now the State of Indiana by Sheldon Breskow, deputy prosecutor; defendant in person and by counsel Ferdinand Samper. Court having examined pre-sentence investigation report asks defendant if there is any legal reason why sentencing should not be pronounced. Defendant having no legal reason Court now sentences Defend-

ant, Lawrence Goodloe, age 38 to Indiana State Prison for not less than one (1) nor more than ten (10) years and disfranchised and rendered incapable of holding any office for a period of one (1) year."

The appellant-defendant filed his Motion for New Trial within time, basing the same on the following grounds, to-wit:

"1. That the finding of the Court is not sustained by sufficient evidence.

"2. That the finding of the Court is contrary to law."

The court overruled appellant's Motion for New Trial. Thereafter and within time appellant filed his transcript and assignment of errors. The error assigned and relied upon is the single specification,

"1. The Court erred in overruling Appellant's Motion For A New Trial."

On the day of trial and before the introduction of any evidence the appellant requested a separation of witnesses. The request was granted, with the exception that the State requested that the witness John Ozols be kept. The witness was permitted to remain over the objection of appellant.

Since the appellant produced no witnesses in his own behalf, the evidence adduced is that of the State of Indiana. The testimony of the State's witnesses, and hence that most favorable to the State, may be summarized as follows:

Stella Elvira Barlow, a bookkeeper for the Indiana Heart Association, testified that on May 9, 1962, she closed up the office of the Heart Association and locked the inside safe and the outside doors of a cabinet next to her desk around 4:30. Another employee Evelyn Ludlow, worked in the office until 5:00. John Ozols, a stock boy for the Association, was in the stockroom at 5:15 preparing mail to be sent out the next day. After completing this work, he took the packages into the main office of the Association and put them on a chair. When he entered the main office, the appellant was sitting in a chair facing one of the doors of the cabinet. The appellant put a

handkerchief up to his face. Ozols testified that when he came into the office, one door of the cabinet had been bent. He had been in the office twenty or thirty minutes before that, and at that time the doors were not bent. Ozols laid the packages down and walked out of the office, down the hall and to the stairs heading to the basement where he met a janitor. Ozols then turned around and saw the appellant pull his head back in from a door to a conference room of the Association. A short time later, the appellant came out of the office and met another janitor. The appellant started telling the janitor that he had seen someone enter the office and that he had gone in to investigate what was going on. The appellant claimed the person had run out of the office. The appellant then started down toward the basement, at which time he said he had just seen the person in the basement. Ozols then called the police.

When the police arrived, the appellant gave them a vague description of the man they were looking for and told them that the person had left the building. The police then questioned the other people in the lobby. One of the janitors told them that the appellant was the person they actually wanted. The appellant had then left the building. The police chased him across an open field. The appellant ran into an apartment building and went to the basement where he was apprehended and placed under arrest.

James Coomler, the police officer who apprehended the appellant and assisted in the investigation of the alleged crime, testified that the cabinet had been pried on and that the door had been forced, sprung and turned away from the cabinet. The appellant was searched when he was arrested, but no weapons or burglary instruments were found on him. No evidence was offered to show that anything was actually taken from the cabinet.

After several of the State's witnesses had testified, Mr. Spencer, the Deputy Prosecutor, made the following statement:

"We have Police Officer Bilbrey, and may I say that this witness is on the affidavit. Do you want to stipulate that the officer would testify substantially the same as Officer Coomler? Since you have asked for separation of witnesses, we may do it by stipulation.

"MR. SAMPER: I have been informed by my client he wants the privilege of cross examination.

"THE COURT: Take the stand please.

"MR. SPENCER: Then you will have to make him your witness, as I do not prefer to call him."

After the State had presented all of its witnesses, Mr. Spencer made the following statement:

"If the Court please, there remains one witness who answered the subpoenas, one other. Mr. Patty is out of town. I don't personally think Mr. Duncan could add anything materially, but he is in Court and is here in answer to the subpoena. If the defense counsel desires to question him, he is here in Court, but if not, at this time the State of Indiana rests."

At this point the defense rested.

Counsel for appellant and the Attorney General display an unusual degree of unanimity on the proposition that in this appeal there is no problem of weighing conflicting evidence. Their paths part on the legal effect of the evidence adduced.

The appellant says the evidence shows that the appellant was found sitting in a chair in the main office room of the Indiana Heart Association, in front of a metal cabinet that had recently been damaged, under circumstances from which it might be inferred that he was attempting to perpetrate the crime of larceny. The evidence failed to establish that the crime of larceny had been committed. The office in question is located in a public building. The evidence shows other offices in the same building, one being the office of the Legal Aid Society directly across the hall on the same floor from the offices of the Indiana Heart Association. There is no evidence showing exactly when the defendant entered the building or the Heart Association office, and there is no evidence

from which it can be inferred that he entered at a time other than when the building and offices were open to the general public.

Appellant contends the statute on which the affidavit herein was based, § 10-704, Burns' 1956 Replacement, *supra*, has been construed by this court, and it is well settled that the felonious intent must exist at the time of the entry if there is to be a conviction.

"Counsel urge that the finding of guilty on the one count is inconsistent with and negatived by the acquittal of the other offenses for which he was tried. In each of them the entry must be made with felonious intent. § 10-701, Burns' 1942 Replacement; § 10-704, Burns' 1942 Replacement. The court may have had difficulty in inferring that such intent existed when the window was opened. The intent to steal might have been formed after the thief gained entrance." *Evans* v. *State* (1946), 224 Ind. 428, 433, 434, 68 N. E. 2d 546.

Appellant contends the above case indicates clearly what the State of Indiana was required to prove in the case at bar.

Appellant also cites an Illinois case as being in point and persuasive.

"The intent is an essential element of the crime of burglary, and must be proved beyond a reasonable doubt. There is no evidence as to the intent with which the defendant entered the store, unless it is found in his conduct after entering. He was in the store when first observed by any witness. . . . When he came into the store, or why, or how long he had been there, are questions for which the evidence furnishes no answer, certainly not beyond a reasonable doubt. He may have taken advantage of the opportunity to commit larceny, but his presence in the store is as consistent with his innocence as with his guilt of the criminal intent at the time of his entry. Under such circumstances it cannot be said that the felonious intent is proved beyond a reasonable doubt. The plaintiff in error cannot be rightfully convicted of burglary merely because he stole while in the store, if he did steal. The evidence did not sustain the conviction of burglary." *People* v. *Kelley* (1916), 274 Ill. 556, 113 N. E. 926, 927.

The State says:

".... The sole question, therefore, is whether or not, as a matter of law, the unchallged evidence offered by the State was sufficient standing alone, to establish the crime as charged, or more specifically, the existence of the essential element of criminal intent.

"It has long been the rule in this State that the existence of criminal intent is a question of fact which is to be determined solely by the trier of fact, whether such be judge or jury. *Bleiweiss* v *.State* (1918), 118 Ind. 184, 186, 122 N. E. 577.

"The position of this Court has always been that if there is sufficient evidence to form an issue as to the existence of criminal intent, the appellate tribunal will not interfere with the decision of the trier of fact. *Schneider* v. *State* (1914), 181 Ind. 218, 219, 104 N. E. 69.

"These decisions, while somewhat old, have continued to correctly state the position of this Court over the years and have never been overruled or altered. They have consistently been cited with approval by this Court in cases involving the same crime as here involved. See: *Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. (2d) 537, 542; *Coffer* v. *State* (1958), 239 Ind. 22, 23, 154 N. E. (2d) 371."

The fact situation in the case at bar distinguishes the cases cited, to the extent that not only are the cited cases not persuasive, they are not at all in point.

The appellee readily admits that there is no direct evidence of the criminal intent of the appellant at the moment he entered the Indiana Heart Association office.

The appellee further argues:

".... However, it is so well established as to be absolutely uncontrovertable that criminal intent may, if not almost always is, established by inference or circumstantial proof. This was the early rule in Indiana, *Padgett* v. *State* (1885), 103 Ind. 550, 3 N. E. 377, and remains the rule today, *Sinks, Taylor* v. *State* (1956), 235 Ind. 484, 488, 133 N. E. (2d) 563."

There are also other rules of law applicable in criminal cases. The first of which is that in such cases it is the duty of

the State to prove the defendant's guilt beyond a reasonable doubt. *Dudley; Chenoweth* v. *State* (1960), 241 Ind. 201, 204, 165 N. E. 2d 380; *Thomas* v. *State* (1958), 238 Ind. 658, 663, 154 N. E. 2d 503; *Johnson* v. *State* (1957), 236 Ind. 509, 512, 141 N. E. 2d 444.

It is also a fundamental rule of criminal law that all doubts must be resolved in favor of the innocence of the accused. *Asher* v. *State* (1929), 201 Ind. 353, 357, 168 N. E. 456; *Lindley* v. *State* (1929), 201 Ind. 165, 167, 166 N. E. 661.

The affidavit charging defendant listed eight State witnesses, only three of such witnesses were used. One of the State's witnesses was present in court in response to the subpoena issued by the State. This witness was not used, the State wanting to stipulate his testimony would be the same as that of a witness who had previously testified; appellant's counsel refused to so stipulate saying defendant wanted the witness cross-examined. Thereupon, the State, through the Prosecuting Attorney, made the following statement, "[t]hen you will have to make him your witness, as I do not prefer to call him." Under such circumstances we are of the opinion that the failure of the State to put this witness on the stand is presumptive evidence that his testimony would be adverse to the State. 53 Am. Jur. 531, Trial §§ 693, 695; 8 I.L.E., Criminal Law, § 122, p. 222; Orfield, *The Hearsay Rule in Federal Criminal Cases-Part 1*, 42 Fordham L. Rev. 499, 521, (1964), and authorities cited therein.

In view of the record before us in this case, the argument made by the State that appellant's flight is clear evidence of his guilt is not persuasive.

We agree with the contention of the appellant that there is a complete failure of evidence in this cause. We do not weigh the evidence or determine the credibility of the witnesses. It is our duty to review the evidence to see if there is evidence of probative value to sustain the

burden of the State to prove the guilt of the defendant beyond a reasonable doubt and if so, to affirm the judgment of the trial court. After viewing all of the evidence most favorable to the State, and all the favorable inferences that might reasonably be drawn therefrom, there is missing an essential element of the offense for which the appellant was convicted.

The finding and judgment of the trial court is reversed, and the cause remanded with instructions to grant appellant's motion for a new trial.

Lewis, J., concurs.

Hunter, C. J. and Mote, J., concur in result.

Arterburn, J., dissents.

NOTE.—Reported in 229 N. E. 2d 626.