Herbert OATES, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 181S8.

Supreme Court of Indiana.

Jan. 13, 1982.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder, Ind.Code § 35–42–1–1 (Burns 1979) and Battery, Ind.Code § 35–42–2–1 (Burns 1979) and sentenced to forty (40) years imprisonment upon the Murder conviction to run concurrently with five (5) years imprisonment upon the Battery conviction. This direct appeal presents two issues:

(1) Whether the evidence is sufficient to support either verdict.

(2) Whether Defendant was denied his lawful presumption of innocence.

\*     \*     \*

### ISSUE I

The evidence most favorable to the State reveals that on April 8, 1980, Mary Leavell and Beulah Brasher were sitting in the kitchen where Mary lived with her mother, Elizabeth Washington, when Defendant shot the lock off the apartment door with a shotgun. Upon hearing the blast, the women ran into the bedroom, to awaken Elizabeth Washington who was sleeping. Beulah called to her that "somebody shot the door open" and she and Mary then lay next to one another on the floor and parallel with the bed. Defendant followed them and shot and killed Mary. Mrs. Washington fled from the room and, as she did, Beulah said, "Washington, Mr. Oates shot your daughter."

Beulah remained on the floor for awhile. Then she arose and saw Defendant, who pointed the shotgun at her. She fell back on the floor, and Defendant shot her in the foot. Defendant then left the apartment and departed in his automobile.[1]

Defendant was charged with the Murder of Mary Leavell, Ind.Code § 35–42–1–1 (Burns 1979) and the Attempted Murder, Ind.Code § 35–42–1–1; § 35–41–5–1 of Beulah Brasher. Defendant argues as follows:

"The State in this case failed to establish that defendant Oates 'knowingly and intentionally' killed Mary Leavell. In fact, the evidence adduced at trial was quite the contrary. Defendant Oates testified that he did not go to the house with the intent to kill or hurt anyone (Tr. p. 201), and that once inside the house he did not know what happened. He testified that emotionally 'something just cracked' (Tr. p. 196) and he was not aware of what he was doing and he had no recollection of the succeeding events at trial. Further, there was testimony that when defendant Oates entered the house there was no conversation between him and anyone else, and he did not make any verbal threats (Tr. p. 149). Defendant Oates also testified that he wanted very much to live with Mary Leavell, her daughter and their son, and to be a family once again and that Mary had agreed to try and work things out (Tr. pp. 192–193).

"The State's failure of proof on this element is further exemplified by the jury's acquittal of defendant Oates on the charge of Attempt (sic) Murder, and conviction instead for Battery. (Tr. p. 71). As defined in I.C. 35–41–5–1, the crime of 'Attempt' requires the same degree of culpability as would be required to commit the offense itself. The jury clearly found that defendant Oates had not formed the requisite 'intent to commit Murder on April 8, 1980.'"

Defendant acknowledges our standard of review for sufficiency challenges but urges us to adopt the "rational trier of fact" standard of review enunciated in *Jackson v. Virginia* (1979) 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. We rejected that standard in *Norris v. State* (1981) Ind., 419 N.E.2d 129, 134.

From his argument, we discern that Defendant asks us to reweigh the evidence with respect to whether or not his conduct

---

1. In addition to the testimony of Elizabeth Washington and Beulah Brasher, Ernest Johnson testified that he heard two or three shots and then from his window at 1910 North Park Avenue he watched Defendant, carrying a shotgun, depart in an automobile.

was knowing or intentional as those terms are defined in Ind.Code § 35–41–2–2 (Burns 1979), which we cannot do. *Doty v. State* (1981) Ind., 422 N.E.2d 653, 655.[2]

■ The trier of fact may infer Defendant's state of mind from the circumstances surrounding the killing and the method of killing. *Blood v. State* (1980) Ind., 398 N.E.2d 671, 674. Under our prior penal code (since repealed) we allowed the jury to infer the malice required for First Degree Murder from the defendant's deliberate use of a deadly weapon in a manner likely to cause death. *Loyd v. State* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Mrs. Washington testified that her daughter had been living with Defendant but had terminated the relationship on March 17, 1980. Beulah Brasher related the incident, which occurred on the afternoon of the homicide, as follows:

"A. Well Mary Leavell went to Kroger's. Mary Leavell, Washington and the two kids, they went to Krogers. Well when they came back she hit the door so hard and I ran and opened the door. She threw her bag on the table, whatever she had bought. And she said, I saw Mr. Oates. Said, he called me. Said, I didn't go see what he wanted. But the girl was very very nervous."

■ From such evidence the jury could have found that something "cracked" as Defendant claims, or that he intentionally used a shotgun to break into an apartment and to kill the victim in response to her rejection. Additionally, Defendant's departure from the scene in his automobile with the shotgun could reasonably give rise to an inference, by the jury, that Defendant understood what he was doing.

With respect to the Battery conviction, the jury faced a similar choice. They were justified in inferring from Defendant's aiming the gun at Beulah Brasher and pulling

the trigger that he was aware that such action would result in bodily harm to her. *See Jones v. State* (1970) 253 Ind. 480, 482, 255 N.E.2d 219, 220; *Gilman v. State* (1979) Ind.App., 389 N.E.2d 327, 331 (trans. denied); *Padgett v. State* (1978) Ind.App., 380 N.E.2d 96, 98.

We find that the evidence is sufficient to support the convictions.

## ISSUE II

Defendant contends that he was denied his lawful presumption of innocence because the jury failed to reconcile all the evidence with the theory of his innocence as required by law:

"The jury in this case could only have concluded that defendant Oates was guilty of the offenses charged by resolving any doubts and inconsistencies in the evidence *against* defendant, Oates, contrary to the presumption of his innocence."

In *Goodloe v. State* (1967) 248 Ind. 411, 419, 229 N.E.2d 626, 638, which Defendant cites, we stated:

"It is also a fundamental rule of criminal law that all doubts must be resolved in favor of the innocence of the accused."

We also stated:

"In view of the record before us in this case, the argument made by the State that appellant's flight is clear evidence of his guilt is not persuasive.

"We agree with the contention of the appellant that there is a complete failure of evidence in this cause. We do not weigh the evidence or determine the credibility of the witnesses." *Id.*

■ As *Goodloe* demonstrates, the presumption of innocence, to which Defendant refers, does not modify our standard of appellate review with respect to the sufficiency of the evidence. The presumption does not follow Defendant on appeal. *Williams v. State* (1980) Ind., 406 N.E.2d 241, 243.

---

2. Defendant also hints at an inconsistency in the verdicts; however, we have held that the

verdicts need not be consistent. *Hicks v. State* (1981) Ind., 426 N.E.2d 411, 414.

The presumption of innocence, which belongs to every criminal defendant at the outset of a trial, is a concept for protecting the accused against being convicted upon doubtful evidence. It operates as an obligation upon the jury which is explained to it by the trial judge and instructs as to what it should require, if it is to return a verdict of guilty. The presumption exists as a matter of law, but it is for the guidance of the jury, not courts of appeal, and when the trial court has properly instructed the jury upon the matter, it can do no more. The degree of proof that will be required to overcome the presumption rests in the conscience of each juror. It cannot be said that the presumption was denied simply because the evidence was conflicting or because reasonable men might differ in their conclusions therefrom.

▮ The trial court fulfilled its obligation to Defendant with respect to the presumption when it gave the jury Instructions Nos. 11 and 12:[3]

### INSTRUCTION NUMBER 11

"The law presumes the defendant in this case to be innocent of the commission of any crime, and this presumption continues throughout the trial, step by step.

"You should reconcile the evidence in this case upon the theory of the innocence of the defendant if it can be reasonably and consistently done, and there should be no conviction of the defendant unless each member of the jury is convinced beyond a reasonable doubt of his guilt; for the law contemplates, and indeed demands, the concurrence of twelve minds in the conclusion that the accused is guilty; and so long as you, or any of you, have or entertain a reasonable doubt as to the defendant's guilt you should resolve that doubt in his favor and he should not be convicted."

### INSTRUCTION NUMBER 12

"The rule of law which clothes every person accused of a crime with the presumption of innocence, and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid anyone who is in fact guilty of a crime to escape from just and merited punishment, but is a humane provision of the law, which is intended, so far as human agencies can, to guard against the danger of any innocent person being unjustly accused or punished."

These instructions clearly explain how the "presumption of innocence" operates and the State's burden if it is to overcome that presumption.

Conceivably, if a jury were to return a verdict of guilty upon insufficient evidence, it might be because it failed to give the defendant the benefit of the presumption. But such matter would be asserted on appeal by a challenge to the sufficiency of the evidence. The only manner, of which we are aware, for questioning whether or not the defendant was "denied the presumption," is by an assignment addressed to the instructions upon the matter. Clearly such an assignment was not available to this defendant. *Sloan v. State* (1980) Ind., 408 N.E.2d 1264, 1266; *Ferguson v. State* (1980) Ind., 405 N.E.2d 902, 905; *Kennedy v. State* (1977) 267 Ind. 322, 325–26, 370 N.E.2d 331, 332.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.

---

3. Defendant does not claim that the jury did not follow the instructions. If his position is that the presumption of innocence operates to limit the jury's power to determine the credibility of the evidence merely because the evidence is in conflict, such position is not tenable.