Lawrence GREEN, Appellant,

v.

STATE of Indiana, Appellee.

No. 882 S 293.

Supreme Court of Indiana.

April 2, 1984.

Brent Westerfeld, Choate, Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Lawrence Green was found guilty by a jury in the Tippecanoe Superior Court of class B felony burglary, class B felony attempted burglary, class D misdemeanor battery on a police officer and class D felony theft. The jury subsequently found Appellant to be a habitual offender. The trial court accordingly sentenced Appellant to concurrent imprisonment terms of six years for burglary, six years for attempted burglary, six months for battery and two years for theft. A

consecutive term of thirty years also was imposed upon Appellant for being a habitual offender. Appellant now directly appeals and raises the following seven consolidated issues:

1. admission of evidence obtained during an investigatory stop of Appellant;

2. admission of certain exhibits in spite of alleged failure to establish a proper chain of custody;

3. refusal to allow Appellant to object outside of the jury's presence to the admission of a certain lab report;

4. motion for mistrial based on the State's submission of a certain lab report;

5. admission of testimony that Officer Stonebraker was acquainted with Appellant prior to his instant arrest;

6. admission of certain instructions; and

7. sufficiency of the evidence.

Shortly after 3:00 a.m. on July 23, 1981, Paula Rochman was awakened by someone attempting to break into her home on Brown Street in Lafayette. She screamed and the man left. Police were called and Officer Gary Bennett responded by proceeding toward the scene. Enroute, Bennett observed a man walking down Brown Street about two blocks from Rochman's residence. Since it was very early in the morning and Appellant was the only person in the area, Officer Bennett stopped and asked Appellant for his name and where he was coming from. Appellant stated his name and said that he was coming from a friend's house in the neighborhood. Appellant could not, however, supply the friend's name or the friend's address. Officer Stonebraker arrived and remained with Appellant while Bennett proceeded to Rochman's house.

At Rochman's house, Officer Koon discovered a black wallet and some papers lying next to what appeared to be a sandy flower bed. In this flower bed Koon found fresh boot prints which bore a distinctive pattern. These prints were in the vicinity of the window which showed signs of an attempted entry. In the wallet was the driver's license of Johnny Bunch who lived two houses away from Rochman. Police went to the Bunch residence and found a screen removed from a window and the door standing open. Mr. and Mrs. Bunch were awakened whereupon they discovered certain items missing from their home. Bunch informed the police that the house was locked and secured at 2:30 a.m. Bunch was missing a pair of trousers, a belt, a tape measure, a black cowhide billfold containing identification and other papers, some old nickels, a pocket knife, a nail clipper and a twice-folded one-hundred dollar bill.

The officers at Rochman's house radioed Stonebraker and asked him to check Appellant's shoes. Stonebraker checked the shoes and found that they had the described groove and ridge pattern. Having determined this, Stonebraker took Appellant to Rochman's house where his boots were positively matched with the bootprints discovered near Rochman's window.

Bunch's trousers were found with Bunch's belt missing near Rochman's house. Bennett recalled that he found a coiled belt on Appellant when he frisked Appellant before going to the crime scene. The belt was not taken from Appellant at that time but was found later under a seat in the police car in which Appellant had been sitting. While at Rochman's house, Officer Stonebraker asked Appellant for permission to search him which Appellant gave. Stonebraker found in Appellant's pockets a pocket knife, some nickels and a twice-folded one-hundred dollar bill. Bunch identified these items as belonging to him. Appellant was then informed that he was under arrest. Appellant strongly resisted the officers and had to be forcibly subdued and handcuffed. While Appellant subsequently was incarcerated in the jail, Officer Stonebraker ventured near his cell and was slapped across his face by Appellant.

## I

Appellant first contends that Lafayette Police Officers Stonebraker and Bennett

exceeded constitutional and statutory limitations on the scope of an investigatory stop. Appellant specifically claims that the officers unreasonably detained him in violation of the Fourth Amendment to the United States Constitution and Indiana statutory law after Appellant had satisfactorily answered their initial inquiries. He argues that he should have been immediately released by the officers at that point. Appellant also claims that there was no probable cause for his continued detention, that Bennett unconstitutionally seized his boots, and that Stonebraker violated the Fourth Amendment when he searched his pockets without a warrant and without probable cause to believe that Appellant had items of evidence from the Bunch residence on his person.

■ We agree with the State's contention that the stop and search of Appellant was proper. Appellant was the only person in the vicinity of a reported break-in at 3:37 a.m. He was moving in a direction away from the crime scene on the same side of the street and within two blocks of the crime. He told police that he had been visiting a friend in the neighborhood but was unable to give the name of that friend or an address. He was antagonistic and reluctant to cooperate with the police. The police were justified in making this stop and investigation. *Terry v. Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The police also had a right to make a weapons frisk of Appellant. *Adams v. Williams,* (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612.

While Appellant was being stopped and investigated, police were investigating the scene of the attempted burglary and found evidence of an additional break-in nearby. Officers at the scene also discovered bootprints clearly imprinted in the ground which revealed a distinctive type of shoe. Radio transmission to the officer talking with Appellant ascertained that Appellant was wearing such shoes. This was a short time after the original stop and not an unreasonable length of time for police to detain Appellant under the circumstances.

■ Probable cause exists when, at the time of arrest, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question. *Funk v. State,* (1981) Ind., 427 N.E.2d 1081, *reh. denied* (1982). Here the police were informed about the suspicious circumstances related above together with the bootprints at the scene which matched the shoes Appellant was wearing. The police therefore had probable cause to justify them in continuing to detain Appellant. *See Hatcher v. State,* (1980) Ind., 410 N.E.2d 1187; *Williams v. State,* (1974) 261 Ind. 547, 307 N.E.2d 457, *reh. denied.*

■ Since probable cause existed, the police had sufficient evidence to arrest Appellant at that point. They did not do so. Once a subject is under arrest a reasonable custodial search may be conducted and evidence found thereby is admissible at trial. *Akins v. State,* (1981) Ind., 429 N.E.2d 232, *reh. denied* (1982). The State admits, however, that Appellant was searched before he was formally placed under arrest. It is the State's contention that since probable cause existed prior to this search, the failure to place Appellant under arrest before searching him was harmless error as expressed in *United States ex rel. Roberts v. Ternullo,* (E.D.N.Y.1976) 407 F.Supp. 1172. Appellant claims that the seizure of his boots to compare them to the bootprints in the flower garden was an unconstitutional seizure. He is incorrect in that assertion. The use of the boots in comparing them to the prints found at the scene of the crime was permissible. *See Hatcher, supra; Biggs v. State,* (1929) 201 Ind. 200, 167 N.E. 129. Furthermore, there was evidence that Appellant voluntarily consented to being searched. Police officers testified that they asked Appellant if they could search his pockets for items missing from Bunch and Appellant gave them permission to do so. Appellant does not deny that he gave permission to the police officers to search him but rather simply states that his constitutional rights were violated.

The detention and search of Appellant by the police was therefore proper and the trial court properly denied the motions to suppress the items of evidence obtained from Appellant at the scene. *United States v. Mendenhall,* (1980) 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497.

## II

■ Appellant objected to the admission into evidence of the old nickels found on him claiming that a proper chain of custody was not shown. It is well-settled that no chain of custody need be shown for certain items of hard physical evidence which are not of a fungible character. *Dier v. State,* (1982) Ind., 442 N.E.2d 1043. The items in question were old nickels of particular dates which could be recognized and were testified to by the police. One of the nickels even had a black stain on it which apparently was from the billfold it had been in. Police testified that nickels with certain dates on them were found on Appellant; the nickels offered into evidence bore such dates. Any weakness in the connection of these particular items of evidence to the crime involved goes only towards the weight of the evidence and not to its admissibility. *Young v. State,* (1980) Ind., 409 N.E.2d 579. No reversible error is presented on this issue.

## III & IV

Appellant twice moved to be allowed to make his objection to the admission of certain evidence outside the presence of the jury. The trial court refused permission on both occasions. Appellant subsequently requested a mistrial based on the testimony heard by the jury over Appellant's objections. The trial court denied the mistrial motion and admonished the jury. Appellant now claims that the trial court committed reversible error on all of these incidents.

One incident occurred during the testimony of Officer Bennett. Bennett testified that he had difficulty talking to Appellant when he stopped Appellant on Brown Street because Appellant was belligerent and uncooperative. Bennett also testified that he had Officer Stonebraker talk to Appellant because he thought Stonebraker might be more successful. The State thereupon asked Bennett why he felt Stonebraker could have been more successful with Appellant. It was at that point that Appellant moved to make his objections outside the presence of the jury but the trial court refused. Officer Bennett answered the question by stating that Stonebraker previously had known Appellant. Appellant contended in his motion to correct errors and now contends that he was severely prejudiced by the revelation that Officer Stonebraker previously was acquainted with Appellant as the revelation implied that Stonebraker's acquaintance involved prior crimes committed by Appellant. It was true that Officer Stonebraker had arrested Appellant for drug offenses in the past but this fact was not revealed to the jury. It simply was stated that Stonebraker knew Appellant personally.

■ The trial court has discretion to manage the conduct of trial proceedings and the trial judge's discretion in doing so will not be disturbed unless a defendant is so prejudiced by the result that an abuse of discretion is manifest. *Lock v. State,* (1980) Ind., 403 N.E.2d 1360. It does not appear that the instant trial court so abused its discretion that its action is reversible here. One might infer that an officer knew a particular person because that person had been involved in prior crimes. There are many other ways, however, in which a police officer can be acquainted with a particular person that have nothing to do with prior criminal activity. There was no inference made that Stonebraker had been involved with Appellant through prior arrests. It simply was stated that Bennett was not getting along well with Appellant and felt that Stonebraker might have more success because Appellant and Stonebraker knew each other. We find no abuse of discretion nor prejudice resulting to Appellant in this to the extent that reversal would be justified.

The second incident arose when the State attempted to admit into evidence Exhibit 26. Exhibit 26 was a laboratory report containing information determining whether the black substance found on one of the nickels taken from Appellant was from the black cowhide material of Johnny Bunch's wallet. Since the technician who performed that analysis was not available for cross-examination, the report was excluded from evidence as hearsay. The trial judge admonished the jury to disregard the mention of the report. Appellant argued that the admonishment was insufficient to cure the impropriety of the mention of the hearsay report and requested a mistrial which was denied. It is well-settled that the decision to grant a motion for mistrial is within the discretion of the trial court and will be reversed only for an abuse of that discretion. *Biggerstaff v. State*, (1977) 266 Ind. 148, 361 N.E.2d 895. A mistrial will not be required unless the improper questioning places the defendant in grave peril. *See White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312. In attempting to admit Exhibit 26 into evidence, the jury heard what the nature of that report was. It was not admitted into evidence, however, and the jury was admonished to disregard all that they had heard. The State's contention is well-taken that since Exhibit 26 was merely cumulative to other evidence involving the nickels, the billfold, the knife, the belt and the one-hundred dollar bill found on Appellant, any error was harmless. Considering all of these facts and circumstances, we do not find that the trial judge abused his discretion by the manner in which he handled this entire episode. We find no error on these issues.

## V

Appellant next claims that the trial court committed reversible error by admitting the testimony which showed that Officer Stonebraker was acquainted with Appellant prior to the incident in question. We already have discussed this contention in Issue III and IV above and now only add that this Court faced a similar contention in *Williams v. State*, (1978) 267 Ind. 700, 373 N.E.2d 142. In *Williams*, a police officer testified that the defendant told him that the defendant was once at the police station when the defendant had been shot at a time prior and unrelated to the crime for which that defendant was then on trial. We held in that case that the contested testimony was not evidence of prior crimes and was admissible. The evidence in *Williams* certainly has a greater potential for showing unrelated past crimes than the evidence in the instant case that Stonebraker knew Appellant before the instant arrest. We now hold, as we did in *Williams*, that no reversible error was committed.

## VI

Appellant also claims that the trial court erred by giving Instruction 12 since it was not a proper instruction and it unduly emphasized reasonable doubt by duplicating Instruction 14 which also was given. Instruction 12 read:

"While the State must, in a criminal case, prove a defendant guilty of the crimes charged in each information beyond a reasonable doubt, they need not be proven beyond all possible doubt, for such proof could seldom, if ever, be produced."

This instruction preceded Instruction 14 which was a more lengthy and more general instruction on reasonable doubt. Instruction 12 is a proper and correct statement of the law. *Toliver v. State*, (1978) 267 Ind. 575, 372 N.E.2d 452. Furthermore, the State's contention is well-taken that although Instruction 12 is somewhat similar to one section of Instruction 14, it complements Instruction 14 and does not merely repeat it. Both instructions gave the jury a complete and proper understanding of reasonable doubt and the trial court did not err by giving both.

Appellant also objected to the giving of Instruction 13 which read:

"The rule which clothes every person accused of crime with the presumption of innocence and imposes upon the state the burden of establishing his guilt beyond a

reasonable doubt is not intended to aid anyone who is in fact guilty of crime to escape but is a humane provision of the law, intended, insofar as human agencies can, to guard against the danger of any innocent person being unjustly convicted."

When considered with all of the other instructions given by the trial court, this was a proper and correct statement of the law and was a proper jury instruction. *Oates v. State*, (1982) Ind., 429 N.E.2d 949. The trial court did not err by giving Instruction 13.

## VII

■ Finally, Appellant claims that there was not sufficient evidence before the jury to convict him of attempted burglary. In considering this issue, we consider only that evidence most favorable to the State with all logical and reasonable inferences therefrom. *Small v. State*, (1982) Ind., 430 N.E.2d 1168, *reh. denied.* The evidence we have already related above shows that Appellant was found with items stolen from Johnny Bunch's home. Bunch's pants were found in the immediate vicinity of Paula Rochman's residence where fresh bootprints were discovered. Officer Bennett testified that the bootprints had a distinctive pattern of inch-long grooves and ridges that matched the pattern on the soles of Appellant's boots. There was, therefore, sufficient evidence before the jury to justify it in finding Appellant guilty of the attempted robbery of Paula Rochman's home.

■ We note, *sua sponte*, that the trial judge incorrectly imposed a habitual offender sentence upon Appellant. Upon finding Appellant to be a habitual offender, the trial court ordered that Appellant be imprisoned for a term of thirty years consecutive to the sentences already imposed. This was improper. Being a habitual offender is not a separate crime for which a defendant is found guilty but is a status requiring the trial judge to enhance a penalty already given. Rather than sentence Appellant to a separate term of thirty

years consecutive to the other sentences received, the trial judge should have enhanced the sentence given for one of the crimes by thirty years giving a total term for that sentence including the thirty year enhancement. Accordingly, we remand this cause to the trial judge for correction of Appellant's sentences pursuant to this opinion. The trial court is affirmed in all other respects.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.