Aaron ANDREWS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 29S00–8801–CR–20.

Supreme Court of Indiana.

Jan. 18, 1989.

Susan K. Carpenter, Public Defender, Hilary Bowe, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Aaron Andrews was found guilty by jury of count I, robbery, a class B felony, and count II, habitual offender. He was sentenced to 20 years imprisonment for the robbery count, enhanced by 30 years for the habitual offender finding. He directly appeals raising ten issues for our review:

1. propriety of the pre-trial identification procedure;

2. admission of a photograph of a handgun;

3. admission of FBI Special Agent Burt's identification testimony;

4. not allowing the jury to view the photographic exhibits after 15 minutes of deliberations;

5. admission of certified copies of official conviction records;

6. permitting the State to use a chart showing Andrews's alleged prior convictions during final argument;

7. propriety of giving an instruction on the jury's duty in applying the law;

8. propriety of giving an instruction informing the jury about the felony status of Andrews's prior convictions;

9. sufficiency of the evidence relating to Andrews's robbery conviction; and

10. sufficiency of the evidence relating to the habitual offender enhancement.

The facts most favorable to the verdict below show that on December 12, 1984, Geraldine Huffman and Barbara Young were working at the Union State Bank in Hamilton County. Around 3:30 p.m., Andrews entered the bank. Huffman and Young specifically noticed him because he walked into a glass door. Andrews approached Huffman's teller station. He displayed a handgun and demanded money, but Huffman informed him that the station was not in use. Andrews then went to Young's station and again demanded money. Young did not see a gun. She filled a bag Andrews provided and included "bait money" which triggered a silent alarm and a bank camera. Andrews then left the bank, taking $3,032.00. Both Young and Huffman testified they stared at and studied Andrews' face as part of their trained reaction to robberies. Each made subsequent photo-array identifications. FBI Special Agent Weldon Burt developed the bank camera film and testified he recognized Andrews as the robber.

## I

Andrews challenges the pre-trial photo-array identifications by witnesses Huffman and Young as unduly suggestive and prejudicial. Huffman and Young were shown an array of six photographs and asked whether they could pick one which portrayed the robber. The photographs were mug shots of six black men, each with a placard in front of his chest. The placards listed age and weight and five showed the date of arrest. Andrews was the oldest and largest man pictured and the only man shown who had been arrested in 1984 shortly after the robbery. Andrews complains the witnesses were guided to his picture because he was distinguished by his age and size and was the most recently arrested subject. He also complains Young's identification of him was influenced by Huffman's prior identification of him because Young was present when Huffman identified him in the bank kitchen during the photographic array.

Andrews' argument is unsupported by any trial objection either to the photo-array testimony or the in-court identification. The issue is therefore waived. *Outlaw v. State* (1985), Ind., 484 N.E.2d 10, 13. Moreover, each witness testified to an independent basis for her identification of Andrews. Each related how, as part of her trained procedure, she stared at the perpetrator's face, studying and memorizing it, in order to make the identification necessary to apprehend and convict. Regarding the information placards in the photos, each witness testified she did not notice, look at, or read the placards, and noted only the faces. Also, Huffman specifically denied she was influenced by Young's initial identification of Andrews from the array. Thus, the pre-trial identification procedures were not unduly suggestive and did not taint the in-court identifications. *See Randall v. State* (1983), Ind., 455 N.E. 2d 916; *Hilton v. State* (1983), Ind., 454 N.E.2d 1216.

## II

Andrews challenges the admission of State's Exhibit No. 1, a photograph of a handgun, claiming the gun in the photograph had not been connected to him. A two part test rules the admission of an exhibit of physical evidence: 1) the witness who observed the particular instrumentali-

ty must be able to state at the least that the item shown is like the one associated with the crime, and 2) there must be a showing that the item is connected to the defendant and the commission of the crime. *Oglesby v. State* (1987), Ind., 513 N.E.2d 638, 640, *cert. denied* (1988), —— U.S. ——, 108 S.Ct. 1600, 99 L.Ed.2d 914. The physical evidence need only constitute a small but legitimate link in the chain of evidence connecting appellant with the crime. *Id.* As witness Huffman testified that she had a pretty good look at the gun the robber used and that State's Exhibit No. 1 looked like the gun used, her testimony satisfied the foundation required for admission. *See Oglesby*, 513 N.E.2d 638. Thus, there was no error in the admission of the photograph of the handgun.

### III

■ Andrews claims the court erred in allowing FBI Special Agent Burt's testimony that he recognized Andrews in a picture taken by the bank camera. Andrews claims Burt's testimony invaded the jury's function of identifying the person portrayed and caused prejudicial speculation that Andrews had a prior criminal history. Special Agent Burt testified he was able to identify the person depicted in the photograph as someone he had seen "on prior occasion."

The trial court has discretion to manage the conduct of trial proceedings. *Green v. State* (1984), Ind., 461 N.E.2d 108, 113. The decision will not be disturbed unless a defendant is so prejudiced by the result that an abuse of discretion is manifest. *Id.* Andrews fails to show the trial court so abused its discretion that its action is reversible here. One might infer that an officer knew a particular person because that person had been involved in prior crimes. However, there are many other ways in which a police officer can be acquainted with a particular person that have nothing to do with prior criminal activity. *See Brown v. State* (1986), Ind., 497 N.E.2d 1049, 1051–52; *Green*, 461 N.E.2d at 113–14; *Stanek v. State* (1988), Ind.App., 519 N.E.2d 1263, 1265. Here, there was no inference made that Special Agent Burt

had been involved with Andrews through prior criminal acts. Andrews fails to show either an abuse of discretion or prejudice resulting to him from the testimony to the extent that reversal would be justified.

### IV

■ Andrews claims the court erred by denying both the jury's request to view the photographic exhibits and his request to send all exhibits to the jury room. The trial court has discretion in determining whether to send exhibits to the jury room or give the jury a second in-court look at them. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309, 1314; *Henning v. State* (1985), Ind., 477 N.E.2d 547, 550. In exercising its discretion the court should consider whether the material will aid in proper consideration of the case, whether either party will be unduly prejudiced by the further view, and whether the material may be subjected to improper use by the jury. *Id.*

■ Here the jury had retired to begin deliberations fifteen minutes before requesting to view all the photographs admitted during trial. The State opposed the request on the basis the jury might give undue prominence to one photograph. Andrews suggested sending all of the admitted exhibits back to the jury, or alternatively, permitting the jury to view the exhibits in court. The court denied the requests, noting that both the preliminary and final instructions informed the jury that the exhibits should be examined carefully while they were in the jury box and that they would not be sent back to the jury. The trial court concluded that fifteen minutes was insufficient time for the jury to consider all the evidence. It was reasonable for the trial court to conclude that submitting the exhibits at that time would encourage their improper use, possibly as the jury's sole determinant of their verdict. Andrews fails to show an abuse of discretion.

### V

Andrews challenges the admission of exhibits 4, 6, 9, and 10. These exhibits were

admitted during the habitual offender portion of trial.

■ Andrews claims exhibits 4 and 6 were prejudicial and irrelevant because they recited the facts behind the attempted arson charge. Andrews is limited to the relevancy charge as that was his objection at trial. *Von Almen v. State* (1986), Ind., 496 N.E.2d 55, 57; *Walters v. State* (1986), Ind., 495 N.E.2d 734, 738. Andrews claims exhibits 4 and 6 were irrelevant to the habitual offender determination because they recited the facts behind the attempted arson charge. However, the exhibits supply the date of commission, which is necessary in establishing the statutory sequence of the prior felony convictions. *See* IC 35–50–2–8(b). Exhibit 4 is an indictment. Exhibit 6 consists of documents relating to an arrest warrant and provides identifying information used to connect the documents to Andrews. Police testimony revealed information gained from Andrews about his birthdate, birthplace, social security number, nickname, identifying scars and marks which matched the information shown in exhibits 4 and 6. Thus, exhibits 4 and 6 were relevant in that the identifying information connected the conviction to Andrews.

■ Andrews complains that on the "Certification of Records" page in exhibits 9 and 10, Andrew's name and number have been typed over the whited-out name and number of another person. He charges these pages cannot constitute a proper certification of the documents referred to, and thus the documents were improperly admitted. Andrews challenged the admissibility of the attached records at trial on the basis of the alteration. The State responded:

> ... this cover certification of record sheet is a form sheet that is presented by the record keepers. This is the shape, this is the condition it was in when it was certified by them and sent to the State of Indiana, the Hamilton County Prosecutor's Office. The white-out and then the typing name of Aaron Andrews and the prison identification number 50984 was done by the Circuit Court Judge and the Circuit Court Clerk of Cook County.

> They are certifying that this is true and accurate records of Aaron Andrews, Bobby Taylor, a/k/a Aaron Andrews. We believe that this certification is proper and all the exhibits contained within, or all the pleadings contained within State's Exhibit 9 are, would properly be received into evidence.

The State further pointed out that the certified documents had not been changed. The court allowed the documents into evidence.

> Where a record offered in evidence is interlined, erased, or mutilated, the interlineations or erasures should as a general rule be fully and satisfactorily explained, especially where it is sought by the record in such condition to contradict a certified copy, which appears to have been formally and regularly transcribed. However, it has been held that the rule which excludes papers because of an unexplained alteration applies to papers in possession of the party to be injured or benefited thereby, but not to official documents, not in the custody or under the control of the party; and it has also been held that, where a public document, prepared by a sworn officer, is produced by him to show whose custody the law intrusts (sic) it, the party offering it in evidence is not required to explain an alteration appearing to have been made at the same time and by the same hand as the obliterated letters and figures, there being no room for presumption that the document had been fraudulently altered.

32 C.J.S. *Evidence* § 646 (pp. 842–43). Apparently the trial court concluded the alteration was made by the Illinois officials certifying the records and was not made by the prosecution. The court was within its discretion in viewing the certification sheets as proper and in admitting the attached records.

## VI

Andrews claims the court erred in permitting the State to use a chart showing the dates necessary to prove his prior convictions as an aid during final argument in the habitual offender portion of trial. The

court permitted use of the chart for demonstrative purposes over objection.

A trial court is vested with discretion in its control of final arguments. *Jenkins v. State* (1975), 263 Ind. 589, 594, 335 N.E.2d 215, 218. Courtroom demonstrations are admissible subject to the trial court's discretion and, on appeal, the trial court's discretion with respect to the admissibility of demonstrations is subject to review only for an abuse of discretion. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1158, *cert. denied* (1985), 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. Absent an abuse of that discretion, the trial court's ruling regarding final argument will not be disturbed. *Newland v. State* (1984), Ind., 459 N.E.2d 384, 386. In seeking reversal of a conviction, the appellant must establish the trial court's abuse of discretion and resulting prejudice to his or her rights. *Jenkins*, 263 Ind. at 594–95, 335 N.E.2d at 218.

Andrews correctly states any exhibit properly admitted during the trial may be used during closing, citing *Radford v. State* (1984), Ind., 468 N.E.2d 219, 221. He argues here that the chart was not an admitted exhibit and was therefore improper for use in argument. He complains the chart gave credibility to the State's evidence and invaded the province of the jury to determine whether the prior convictions had been proved.

However, *Radford* does not state that only admitted exhibits may be shown to the jury, or that evidence only in its admitted form may be displayed to the jury. Charts and diagrams may be received into evidence after laying a proper foundation, if the fact to be evidenced by the chart or diagram is itself otherwise relevant, material and competent. *Jenkins*, 263 Ind. at 592, 335 N.E.2d at 217. The use the chart here is similar to the use of a blackboard, which has been approved. *See Kampo Transit, Inc. v. Powers* (1965), 138 Ind.App. 141, 211 N.E.2d 781 (blackboard used to show a mathematical calculation of pain and suffering); *Kindler v. Edwards* (1955), 126 Ind.App. 261, 130 N.E.2d 491, *trans. denied* (blackboard used to

show a list of personal injury plaintiff's medical expenses). Thus, the use of admitted evidence in different forms during summation has been permitted for demonstrative purposes.

The State assured the court that all facts on the chart were properly admitted during the trial. Andrews does not allege the contrary. The State was permitted to present its admitted evidence during final argument in a format it felt would aid the jury. Andrews fails to show an abuse of discretion in the trial court's allowing use of the chart.

## VII

Andrews claims the court erred by giving its final instruction No. 9 instead of his tendered instruction No. 1 following the habitual offender phase of trial. In reviewing an issue concerning the refusal of a tendered instruction, this court considers whether the instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which were given. *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1076.

Andrews' tendered instruction No. 1 read:

Article 1, Section 19 of the Constitution of the State of Indiana, states that in criminal cases, the jury has the right to determine both the law and the facts. While you cannot cast aside the advice and instructions of the Court lightly, you do have the power to go your own way and determine the law for yourself in rendering a verdict.

The court's final instruction No. 9 stated:

Since this is a criminal case the Constitution of the State of Indiana makes you the judges of both the law and the facts. Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard, or ignore the law as it exists. The instructions of the Court are the best source as to the law applicable in this case.

The court's instruction No. 9 was a correct statement of the law. *See Johnson,* 518 N.E.2d at 1076.

Andrews argues the court's instruction No. 9 invaded the province of the jury to determine law and fact. Andrews asserts he was prejudiced because the jury was left no choice but to convict him when they found the existence of his prior convictions proved. However, Andrews's tendered instruction was not a correct statement of the law. *See Hitch v. State* (1972), 259 Ind. 1, 284 N.E.2d 783. As the subject of his instruction was covered by the court's instruction, the court did not err in refusing it.

### VIII

■ Andrews challenges the giving of the court's final instruction informing the jury about the felony status of Andrews' prior convictions. The court instructed the jury that attempted arson and armed robbery were felonies. Andrews asserts such an instruction invades the province of the jury by relieving them of the need to independently find that the State proved the felony element of the habitual offender statute. However, as no objection to the instruction was lodged when the court tendered it, this issue has not been preserved for appellate review. *Baker v. State* (1987), Ind., 505 N.E.2d 49, 51. Further, the merits of this argument have been decided adversely to Andrews. *See Shelton v. State* (1986), Ind., 490 N.E.2d 738, 744.

### IX

■ Andrews claims the evidence of identification is insufficient to sustain his conviction for robbery. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State,* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* (1980), 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Andrews complains the State never introduced yellow aviator sunglasses, a blue knit cap, a tan jacket, or a gun which the witnesses noted. However, Andrews does not explain what element of the offense was dependent on these items, or by what authority the conviction requires these items. Andrews also complains his conviction is based on an investigating FBI agent's recognition of him and two witnesses' choice of him as the robber from a photographic display which he claims was susceptible to misidentification. However, the identification evidence was unambiguous and supports the jury's finding that Andrews was the perpetrator. Andrews presents no reversible error here.

### X

■ Andrews claims the evidence is insufficient to sustain the habitual offender enhancement in that there is a failure in the proof required. Andrews asserts the State failed to prove the conviction date for cause Nos. 72–2266 and 75–6644. However, Exhibit No. 9 shows that Andrews committed armed robbery in Illinois on May 14, 1972. Under cause No. 72–2266, he was subsequently convicted and sentenced on August 31, 1973 for that offense. Exhibit No. 10 shows that Andrews committed armed robbery in Illinois on August 20, 1975. Under cause No. 75–6644, he was convicted and sentenced on November 20, 1975. The evidence shows the instant crime was committed on December 12, 1984. These exhibits show the proper sequence of prior unrelated felonies to support the habitual offender finding.

Andrews also complains State's Exhibits 7 and 8, showing Andrews's fingerprints, do not aid in identifying Andrews as the person convicted in cause Nos. 18–186, 72–2266 and 75–6644. Andrews complains the exhibits of the prior felonies are connected to him by name only and do not contain a picture or fingerprints of the person referred to. However, Exhibits 7 and 8 were introduced by witnesses who explained the fingerprint card in Exhibit 7 was made by the same person as the fingerprint card in Exhibit 8. Exhibit 7 shows Andrews' fin-

gerprints taken around the time of trial. Exhibit 8 shows Andrews's fingerprints taken two years after the last prior conviction alleged. The placards visible in the mugshots attached to the fingerprint card in Exhibit 8 bear the identification number 50984. Exhibits 9 and 10, showing the Illinois convictions, also bear that number. Exhibit 8 is therefore connected to exhibits 9 and 10 by the identification number. The fingerprint cards were therefore probative of Andrews' identification. Additionally, the Illinois fingerprint card was sufficiently connected with Andrews due to the similarity of name, physical descriptions, and the information appearing on the reverse sides of the mugshots and fingerprint card from Illinois, particularly name, alias, birthdate, place of birth, and physical scars and marks.

Andrews also complains the exhibits of the prior felonies were introduced without a witness to identify them. However, the record shows Deputy Farley testified to identifiers he learned from Andrews, including name, alias, birthdate, place of birth, and physical scars and marks. This matches identification evidence appearing on the documentation of the prior felonies. The State has shown how the fingerprint evidence connected Andrews to the conviction records. The evidence establishing Andrews' three prior felony convictions was sufficient.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.