JAMES A. LOFTON *v*. STATE OF INDIANA.

[No. 577S355. Filed July 25, 1978.]

*Richard G. Striegel,* of New Albany, for appellant.

*Theodore L. Sendak,* Attorney General, *Victoria R. Van Duren,* Deputy Attorney General, for appellee.

PIVARNIK, J.—On October 1, 1976, appellant Lofton was convicted on four counts at the conclusion of a jury trial in Floyd Circuit Court: second degree murder, first degree arson, commission of a felony while armed, and assault and battery with intent to kill. He was sentenced to life imprisonment, five to twenty years imprisonment, twenty-one years imprisonment and two to fourteen years imprisonment, respectively, for the four crimes.

Three issues are presented for our review in this appeal. These issues concern: (1) the trial court's denial of a motion

to suppress appellant's statement; (2) the admission into evidence of four notes and a hollowed-out Bible which the appellant had sent to a fellow inmate, and; (3) the sufficiency of the evidence supporting appellant's conviction.

## I.

Appellant's first allegation of error is that the trial court improperly denied his Motion to Suppress an incriminating statement he made to police. Lofton claims that the statement was taken after he had requested the assistance of counsel and that once he had asserted his Sixth Amendment right to counsel, no further questioning could take place without an attorney being present.

The question of the admissibility of a confession is to be controlled by determining, from the totality of the circumstances, whether or not it was made voluntarily. *Works* v. *State*, (1977) 266 Ind. 250, 362 N.E.2d 144; *Ortiz* v. *State*, (1976) 265 Ind. 549, 356 N.E.2d 1188. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement of any sort, and whether the accused's will was overborne. *Johnson* v. *State*, (1968) 250 Ind. 283, 235 N.E.2d 688. Although the state at trial is required to prove the voluntariness of appellant's statement beyond a reasonable doubt, we review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial probative evidence to support the trial court's findings. *Works* v. *State, supra.*

The evidence and testimony brought out at the hearing on appellant's Motion to Suppress reveal the following. At approximately 5:30 p.m. on March 23, 1976, Joe Lewis, a detective with the New Albany Police Department, and Randy Hubbard, Chief of Police of New Albany, went to the appellant's trailer to serve an arrest warrant issued by the City of Louisville for appellant. After an exchange of gun-

fire, appellant was taken into custody at the New Albany police station. Appellant waived extradition and was transported to the Louisville Police Department.

While in the custody of the Louisville Police, appellant claims to have been poorly treated. He testified that the local police refused to allow him to sleep and had described how appellant would be put to death in the electric chair. He also testified that he requested to speak to an attorney. Appellant was allowed to call an attorney but was unable to reach one. He then called his father and asked him to hire a lawyer for him. Appellant's father was also unable to contact an attorney. A Louisville police officer then showed appellant a statement made by his confederate, Willie Appleby, in which Appleby blamed Lofton for all of the activities which led to their arrest. Upon reading Appleby's statement, the appellant asked to speak with Captain Parsons of the New Albany Police Department.

Captain Parsons arrived in Louisville at approximately midnight on the evening of March 23 in response to appellant's request to see him. Parsons immediately advised appellant of his *Miranda* rights and Lofton read and signed an "Advice of Rights and Waiver" form. At the suppression hearing, Captain Parsons testified that the appellant told him that "he did understand his rights" and further, that "Mr. Lofton was calm, talked with a low voice, stated to me he wanted to get everything straightened out." When asked on the witness stand whether Lofton had informed him of his attempt to call an attorney, Parsons responded, "No. He didn't." When questioned about the discussion with Captain Parsons, appellant gave the following answers:

> "Q. And one of those things was that you have a right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning?
> A. Yes.
> Q. Now, did you understand that?
> A. I understood it.

Q. Did you ask Captain Parsons for an attorney?
A. No. I don't think I did.
Q. Did Captain Parsons at any time threaten you in any way?
A. No. Mr. Parsons was nice to me."

It is clear that where a request for counsel has been made, an accused may, at a later time, waive his right to counsel. *Rouse* v. *State*, (1971) 255 Ind. 670, 266 N.E.2d 209, 211. However, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel where interrogation continues without the presence of an attorney. *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694; *Pirtle* v. *State*, (1975) 263 Ind. 16, 323 N.E.2d 634, 638. In the present case, we find that the testimony by appellant and Captain Parsons along with the advice and waiver of rights form signed by the appellant, constituted sufficient evidence to support the trial court's finding of a voluntary waiver by Lofton of his right to counsel. We further find that under the totality of the circumstances, the appellant's statement was freely and voluntarily given. There was no error in the trial court's denial of the appellant's Motion to Suppress.

## II.

The appellant next argues that the trial court erred in admitting certain exhibits into evidence. These exhibits consisted of several notes written by appellant to one of the Floyd County Jail "trustys," soliciting aid in Lofton's escape plan, as well as a hollowed-out Bible which appellant gave to the "trusty" for the purpose of obtaining a knife. Appellant contends that these exhibits were inadmissible because they did not constitute an attempt to escape from jail.

A review of the record in this case shows the appellant's argument to be somewhat misleading. In addition to the

objectionable exhibits, the state also introduced into evidence a hacksaw blade found in Lofton's cell, one-half of a bar of soap used to lubricate such blades, a note to the "trusty" from appellant requesting a gun and a sketch showing appellant's intended escape route. There was also testimony from the jail's supervisor who, after searching appellant's cell, stated, "We found one bar that was cut practically all the way through and wouldn't have taken much more to knock it out of place."

This evidence, when taken together, sufficiently established an attempted escape. Evidence of attempted escape is always competent evidence of consciousness of guilt. *Thomas* v. *State*, (1970) 254 Ind. 561, 261 N.E.2d 224; *Layton* v. *State*, (1968) 251 Ind. 205, 240 N.E.2d 489, 492. Thus, the evidence in question was properly admitted.

## III.

In his final argument, appellant asserts that the verdict of the jury was not supported by sufficient evidence and was contrary to law. In this regard he contends that the evidence showed that appellant could only have committed the crimes in question because he was placed in fear for his life by a codefendant, Willie Appleby, or because he was insane when the acts were committed.

When a defendant enters a plea of not guilty by reason of insanity, the burden of proving sanity beyond a reasonable doubt is on the state. *Montague* v. *State*, (1977) 266 Ind. 51, 360 N.E.2d 181, 187. When reviewing the sufficiency of the evidence supporting the jury's conclusion that the defendant was sane, we treat the issue like other questions of fact. *Sypniewski* v. *State*, (1977) 267 Ind. 224, 368 N.E.2d 1359, 1363. This court does not judge the credibility of witnesses nor weigh the evidence, but rather looks to the evidence most favorable to the state and the reasonable inferences to be drawn from that evidence. If

there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be disturbed. *Maxey* v. *State,* (1976) 265 Ind. 244, 353 N.E. 2d 457, 459.

With respect to the insanity issue, appellant points to the testimony of Dr. Robert Meyer, a psychologist who testified for the defense. Dr. Meyer stated that appellant was legally insane at the time the criminal acts were committed. The state introduced three psychiatrists who testified to the effect that the appellant knew the difference between right and wrong, was able to understand the consequences of the acts he performed, knew that what he had done was illegal, and had the capacity to make choices. The appellant himself testified as follows:

"Q. You realize that everything that was going on was wrong. You knew right from wrong at that time?
A. Yes, sir.
Q. You did know right from wrong at that time?
A. Yes.
Q. But everything, you didn't do it because you had some urge that you just couldn't overcome to do these things?
A. No. I was afraid.
Q. But you knew it was wrong to do things like that?
A. Yes.
Q. Well there's a difference between fear and insanity. Did you do it because you were afraid or did you do it because you were insane?
A. I don't think I was insane."

It is the prerogative of the jury to believe whomever they choose and to disregard the testimony of witnesses they do not believe. *Sypniewski, supra,* at 1364. In the present case it is clear that the jury disregarded the testimony of appellant's psychologist. It is also clear that the testimony which the jury apparently believed meets our standard of review for sufficiency issues.

Appellant further argues that he was forced to participate in the crimes by Willie Appleby. The evidence supporting this

contention is based wholly upon Lofton's own testimony. The evidence most favorable to the state reveals that on March 23, 1976, the New Albany Fire Department was called to a fire at the home of James Adams. Adams was found with cuts on his head, throat, arm and chest. Adam's wife was found dead. The fire department determined that the fire was the result of arson. The cause of Mrs. Adam's death was determined to be massive brain damage resulting from blows from a heavy sharp instrument.

In Lofton's statement to police, he admitted taking Appleby to the Adam's residence so that they might obtain a gun which Lofton knew was kept there. Appleby proceeded to strike Mr. and Mrs. Adams with a hatchet. Appellant then took the gun and set fire to the home. Afterward, appellant and Appleby returned to Lofton's trailer where Appleby took a shower.

That same afternoon, police arrived at Lofton's for the purpose of executing the Louisville arrest warrant. Appellant attempted to flee, but was captured after an exchange of gunfire. A search of appellant's person disclosed a .22 caliber revolver with four spent casings. Also, twelve live .38 caliber shells were found in his pocket. The revolver was later identified as the gun belonging to Mrs. Adams, which she kept in a drawer at their home. A search of appellant's trailer uncovered two hatchets which Lofton's wife admitted having washed off after appellant and Appleby returned from the Adams' home.

The jury was not required to accept the appellant's exculpatory testimony when the totality of the evidence reasonably supports a finding of guilt beyond a reasonable doubt. We find the evidence sufficient to support the jury's verdict of guilty on all four counts.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 378 N.E.2d 834.