Darrell HANSFORD, Appellant,

v.

STATE of Indiana, Appellee.

No. 384S102.

Supreme Court of Indiana.

April 1, 1986.

Patrick E. Chavis, III, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kenneth P. Williams, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

This is a direct appeal from convictions for burglary, a class A felony; robbery, a class A felony; and two counts of confinement, class B felonies. Appellant was sentenced to concurrent terms of imprisonment of thirty years for the burglary and robbery convictions and two consecutive terms of imprisonment of ten years for the confinement convictions.

Hansford has raised nine issues:
(1) Whether the evidence is sufficient to sustain the two convictions for confinement;
(2) Whether a letter written by his co-defendant was erroneously admitted into evidence;
(3) Whether the trial court erred by admitting testimony and a letter which evidenced appellant's escape from jail;
(4) Whether a police officer's testimony about defendant's oral confession was properly admitted;
(5) Whether the trial court erroneously prohibited defense counsel from cross-examining two State witnesses about their prior convictions;
(6) Whether the trial court erroneously excluded several exhibits offered by appellant;
(7) Whether the trial court erred by refusing appellant's tendered instructions;
(8) Whether the imposition of presumptive sentences for the burglary and robbery convictions was excessive and manifestly unreasonable, and
(9) Whether a trial court may impose consecutive sentences when it specifically states that it does not find any aggravating circumstances.

These are the facts which tend to support the trial court's judgment. On March 24, 1980, Mr. and Mrs. Cass, both in their seventies, had retired to bed in their separate bedrooms. Two men who wore ski masks kicked open Mrs. Cass's bedroom door and demanded, rather specifically, that she give them her "money, jewelry, diamonds, and pearls." When she stated that she did not have any pearls, one man responded, "Oh, yes, you do. I know you

do." Mrs. Cass was lying in bed. One man forcibly turned her onto her stomach, placed his knee on the small of her back, and tied her hands behind her. She sustained three broken ribs.

Mrs. Cass kept cowbells attached to her bedroom door so she would know if anyone opened it. Mr. Cass was awakened by the clanging of these cowbells. One of the men entered Mr. Cass's bedroom and told him not to move or he would shoot. Mr. Cass struggled with the man, who then hit Mr. Cass in the head with a hard object, causing a laceration. The man then bound Mr. Cass' hands and feet and placed a sack over his head. At one point Mr. Cass managed free his hands; however, the man returned and retied them. Cass lay bound on his bed for two and one-half hours. After the men left, Mrs. Cass freed herself and then untied her husband.

Most of the Casses' house had been ransacked. Drawers were open and articles were strewn on the floor. The Casses determined that the property which had been stolen included the wife's antiques, their car, a coin collection, her mink stole, a bracelet-watch, sterling silver plates, an urn and several guns. A total of $150,000 to $250,000 worth of personal property was stolen; only $5,000 to $10,000 worth of this property was recovered by the police and returned.

Co-defendant Kenneth Gibbens had previously worked for the Casses as a housekeeper. While Gibbens was no longer employed by them on the day of the robbery, he had access to the entire house when he worked for them. The place where Mr. Cass kept his box of sterling silver plates would have only been known by someone familiar with the house. One man, who paced back and forth in Mrs. Cass's bedroom, had a skip which she recognized as being very similar to that of Gibbens. When the man finished tying her hands, he reached underneath her pillow and removed her gun. The only persons who knew she kept a gun underneath her pillow were her family and Gibbens.

Michael Ridenour, a friend of appellant, testified that on March 25th, Hansford and Gibbens moved some articles into Ed Haynes' apartment. They claimed that these articles belonged to Gibbens' mother. Ridenour went to Haynes' apartment two days later and saw a mink stole (State exhibit 32), a bracelet-watch (State exhibit 31), and an urn (State exhibit 33) in Haynes' closet. Mrs. Cass identified these same exhibits as items which had been stolen on March 20th and returned to her by the police.

Gibbens was arrested and charged with these crimes on June 5, 1980. After attempting to post bond for Gibbens, Hansford admitted to his friends that he had participated in the crimes. Hansford told Edd Waldo that some of the property which had been taken during the robbery was being stored at a bar which Waldo owned. At the trial, Waldo identified several guns, a sword, and a lamp as some of the items which had been stored at his bar. On June 7th, Hansford expressed his concern to Ridenour that he might also be arrested and related some of the details of the robbery. Hansford also explained to Waldo that the butt of one of the guns cracked when he hit Mr. Cass on his head because he was strong and kept getting up. Hansford told Waldo that they wore ski masks when they robbed the Casses.

On June 24th Hansford again told Ridenour that he was concerned about his potential arrest and that he might leave town. Hansford left the state shortly thereafter. When defendant telephoned later, Ridenour informed him that the police had a warrant for his arrest. Hansford was apprehended in California by an FBI agent who acted under a federal warrant for unlawful flight to avoid prosecution. While incarcerated in the Marion County jail, Hansford escaped and was later apprehended again at a friend's apartment.

Appellant counsel has waived the first six issues presented in his Motion to Correct Errors and listed below. Our review of the case indicates that there is every reason to do so.

## I. Sufficiency of the Evidence

Appellant has argued that the evidence is not sufficient to sustain his convictions for the confinement of Mr. and Mrs. Cass.

When a challenge to the sufficiency of the evidence is raised by an appellant, this Court does not weigh the evidence or judge the credibility of the witnesses. Rather, we review only that evidence most favorable to the State and any reasonable inferences which may be drawn therefrom. If there is substantial evidence of probative value to support each element of the offense beyond a reasonable doubt, then the judgment must be affirmed. *Wooden v. State* (1985), Ind., 486 N.E.2d 441.

Hansford's argument is without merit. The evidence recited above clearly shows that both victims were confined without their consent. Ind.Code § 35-42-3-3 (Burns 1985). Binding the Casses to their bed obviously constitutes a substantial interference with their liberty. Ind.Code § 35-42-3-1 (Burns 1985).

Whether the evidence of injury was sufficient to sustain both class A felonies is a more substantial question. Hansford was convicted of burglary, a class A felony, and robbery, a class A felony. The offenses of burglary and robbery may be enhanced to a class A felony when they result "in either bodily injury or serious bodily injury to any person." Ind.Code § 35-43-2-1 (Burns 1979); Ind.Code § 35-42-5-1 (Burns 1979).

The burglary information alleged that Hansford "did break and enter the building or structure and dwelling of [the Casses] ... with intent to commit the felony of theft ... and said offense resulted in bodily injury to W. Oliver Cass and Sue E. Cass, to-wit: A laceration to the head of W. Oliver Cass and the Breaking of Three of Sue E. Cass's ribs ..." The robbery information alleged that Hansford "did knowingly take from the person or presence of the Casses property, to wit: ... by putting [the Casses] in fear or by using or threatening the use of force ... which resulted in bodily injury to [the Casses], to wit: a

laceration to the head of W. Oliver Cass and the breaking of three of Sue E. Cass's ribs ..."

■ Both the burglary and the robbery charges were enhanced to class A felonies based upon these injuries to the Casses. The imposition of two sentences for the same injurious consequences which were sustained by the same victim and inflicted by the defendant's singular act violatives both federal and state double jeopardy prohibitions. *Bevill v. State* (1985), Ind., 472 N.E.2d 1247 (stabbing of a victim twenty-seven times found to be an insufficient basis to sustain both the attempted murder and the bodily injury element of the class A burglary); *Malott v. State* (1985), Ind., 485 N.E.2d 879 (a defendant cannot be sentenced for both attempted murder and class A burglary when the substantive act for the attempted murder and the injury for the class A felony are both based upon the defendant's single act of shooting the victim); *Flowers v. State* (1985), Ind., 481 N.E.2d 100 (the multiple stabbing of one victim was an insufficient basis to support the substantive act for attempted murder and the class A felony status for burglary, attempted rape, and attempted robbery); *Smith v. State* (1985), Ind., 475 N.E.2d 27 (separate sentences for attempted murder and class A robbery were appropriate since there were "two separate onslaughts upon the [same] victim", DeBruler, J. concurring opinion, 475 N.E.2d at 31).

■ In this case, there were two victims and two separate injuries sustained as the result of two separate acts by the defendant. Moreover, the burglary and robbery statute in effect when the crimes were committed allowed the respective offenses to be enhanced when either a bodily injury or serious bodily injury was suffered by any other person. Either Mr. Cass' lacerations or Mrs. Cass' broken ribs would qualify as bodily injury under either the robbery or the burglary statute. Ind.Code § 35-41-1-2 (Burns 1979). Therefore, either injury would have sufficed as the predicate injury requisite for enhancement of the offense to a class A felony. Under these circumstances, it did not make any difference that the State chose to allege the injuries sustained by both victims as the predicate injury rather than to specify which injury was the predicate for each of the offenses. Accordingly, appellant's convictions for class A burglary and class A robbery can both stand.

## II. Letter Written by Co-defendant

Hansford argues that the trial court erred by admitting into evidence a letter written by his co-defendant and addressed to Edd Waldo. One theory of appellant's defense was that Waldo was the second man who participated in the Cass robbery with Gibbens. He claims that the admission of this letter was prejudicial to him since the letter essentially exculpates Waldo and thus is harmful to his defense theory.

While Gibbens was in prison he received a letter from defendant's counsel Smith, requesting Gibbens' cooperation "as a witness against Mr. Waldo to show that he was one of the participants in the Cass burglary." Gibbens wrote a letter to Waldo about this request (State's exhibit 42), in which he quoted the relevant portion of the letter which Smith wrote to him and then stated that he would not "testify of any such thing because you did not commit that robbery Edd and we both know it." The court admitted Gibbens' letter into evidence for the limited purpose of allowing the State to ask questions about the statement that Waldo did not commit the robbery. When questioned by the State, Gibbens verified that the statement he wrote to Waldo was true: Waldo had not participated in the Cass robbery.

■ Evidence on an issue is relevant when it renders the desired inference more probable than it would be without the evidence. *Connell v. State* (1984), Ind., 470 N.E.2d 701. Evidence is generally admissible if it has a tendency to prove or disprove a material fact. *May v. State* (1982), Ind., 442 N.E.2d 1084. However, evidence otherwise admissible may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice to the defendant. The admission or rejection of evidence is within the discretion of the trial court.

■ This letter indicated that Waldo did not participate in the Cass robbery. While this evidence may have harmed appellant's trial strategy to implicate Waldo as the second participant in the crimes, the evidence had the tendency to disprove a material fact which was in dispute and was thus relevant. The court was within its discretion in concluding that the relevance of the evidence outweighed its prejudicial effect.

### III. Evidence of Escape

■ Appellant argues that evidence of his escape from jail and evidence of his plan to escape were erroneously admitted by the trial court. He claims that this evidence was prejudicial to his defense.

Officer Mel Willsey testified at trial that Hansford had escaped from the Marion County jail on September 12, 1983. Hansford subsequently admitted during cross-examination that he had escaped from jail.

Hansford wrote a letter to a friend which outlined in detail his plan to escape from the jail. Detective Willsey found this letter in Hansford's personal property bucket when a search was conducted of the cellblock subsequent to the escape. During cross-examination, Hansford identified the handwriting in the document as his own. He also testified that he did not see any material alterations on these documents.

[12] Evidence of an escape is a sufficient basis for the jury to infer consciousness of guilt and is relevant to the issue of the defendant's guilt. *Lee v. State* (1982), Ind., 439 N.E.2d 603; *Lofton v. State* (1978), 269 Ind. 60, 378 N.E.2d 834; *Layton v. State* (1968), 251 Ind. 205, 240 N.E.2d 489. Therefore, the letter and the testimony were properly admitted into evidence.

### IV. Oral Confession

Officer Ronald Beasley testified about the substance of an oral confession which Hansford gave. Appellant claims that the admission of this evidence was prejudicial to his defense. Appellant fled this state and was finally apprehended in California and then returned. On May 26, 1983, Beasley interrogated Hansford. Beasley advised defendant of his *Miranda* rights before interviewing him. Hansford indicated that he understood his rights and then signed a waiver form. Hansford then told Beasley that he was the second person who was with Kenneth Gibbens in the Cass residence.

■ The admissibility of a statement or confession is controlled by determining from the totality of the circumstances whether the statement or confession was given voluntarily, and not through inducement, violence, threat or other improper influences which would overcome the free will of the accused. *Mays v. State* (1984), Ind., 469 N.E.2d 1161. Hansford does not present any evidence which would indicate that he was coerced in any fashion by the police or that he did not understand the consequences when he signed the waiver and gave his statement. Rather, he claims only that admission of this incriminating statement was prejudicial to his defense. However, since the police who interrogate an accused followed the relevant substantive and procedural rules, the statement was properly admitted into evidence at the accused's trial.

### V. Impeachment Based Upon Prior Convictions

Defendant argues that the trial court erroneously prohibited defense counsel from cross-examining Waldo and Ridenour about their prior crimes.

The record does not show that defense counsel posed any questions to Michael Ridenour regarding any prior crimes he may have committed. During direct examination by the State, Edd Waldo admitted that he had prior convictions for crimes of deceit and dishonesty: arson in 1961, breaking and entering in 1965, and unlawful use of a credit card in 1970.

■ During cross-examination, defense counsel attempted to question Waldo about more specific details of these prior convictions:

(1) Whether the arson conviction of 1961 also involved the burglary of a residence;

(2) What type of business was involved in the 1965 conviction for breaking and entering;

(3) Whether the 1970 conviction was based, upon the unlawful use of a John Patrick Quinn's credit cards, and

(4) Whether he obtained the credit cards by committing an armed robbery.

The trial court sustained each of the State's objections to these questions.

■ A witness may be cross-examined about prior criminal convictions for offenses which are infamous crimes or crimes of dishonesty. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. However, a witness may be questioned only about whether he had previously been convicted of a particular crime. *Skaggs v. State* (1973), 260 Ind. 180, 293 N.E.2d 781. Generally, the details of the prior convictions for crimes of dishonesty or false statement may not be explored. *King v. State* (1984), Ind., 468 N.E.2d 226. The trial court properly restricted defense counsel's efforts to explore the details of these crimes.

■ Defense counsel then argued at a hearing outside the presence of the jury that Waldo had participated in other felonies for which he had not been convicted or charged. He alleged that Waldo had participated in a burglary with Gibbens previous to the Cass burglary, and he wanted to question Waldo about this burglary. His request to so question Waldo was correctly denied by the court. A witness may not be impeached by specific acts of misconduct which have not been reduced to a criminal conviction. *Bland v. State* (1984), Ind., 468 N.E.2d 1032.

## VI. *Exhibits*

Hansford argues that the trial court erroneously excluded several exhibits which he offered: D, G, O, and Q.

■ Exhibit D is a complaint which was filed in U.S. District Court indicating that appellant had been charged with unlawful flight to avoid prosecution of the present offenses. Appellant's attorney wrote to co-defendant Gibbens while he was in prison and requested his cooperation at appellant's trial. The letter which Gibbens sent to the attorney in response was offered as exhibit G. In this letter, Gibbens suggested to the attorney that he contact his public defender. He also informed the attorney that his public defender had been forwarded a copy of both of the letters. Exhibit O was a letter of verification from the California company for whom Hansford had been working when he was arrested in 1983. The author of this letter was not present at the trial to lay a foundation for its introduction or to verify his signature. The record does not clearly disclose the nature of exhibit Q. The relevancy of exhibits D and G to the issues in this case is not apparent. Exhibit O was properly excluded based upon an improper foundation and the remoteness of the evidence to the case. We do not find any basis for reversal in these decisions of the trial court.

## VII. *Instructions*

Appellant argues that the trial court erred by refusing to charge the jury with his tendered instructions numbered 1, 2, 3, 4, 6, 7, 8, and 10.

■ To determine whether any error resulted from the refusal of a tendered instruction this Court must evaluate:

(1) Whether the tendered instruction correctly states the law;

(2) Whether there is evidence in the record to support the giving of the instruction, and

(3) Whether the substance of the tendered instruction is covered by other instructions given.

*Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836.

Defendant's tendered instruction number 4 recited that it is a "fundamental rule of law that all doubts must be resolved in favor of the accused," citing *Goodloe v. State* (1967), 248 Ind. 411, 229 N.E.2d 626. R. 108 We have previously held that this instruction is an incorrect statement of the law. *Lewis v. State* (1976), 264 Ind. 288, 342 N.E.2d 859.

There was no evidence in the record to support defendant's tendered instructions numbered 2 and 10. Instruction 2 recited that the jury could consider any evidence of defendant's good character when determining whether the State had proved his guilt beyond a reasonable doubt. Defendant's character was not in issue and therefore the instruction was properly refused. Instruction 10 recited that evidence of prior inconsistent statements of a witness may be used by the jury to evaluate the witness' credibility and the weight to be accorded that witness' testimony. Several State witnesses were questioned during cross-examination about prior inconsistent statements which they allegedly made. However, none of the witnesses was ever confronted with evidence of their supposedly inconsistent statements, such as a deposition or recording. Without evidence that such a statement has ever been made, an instruction on prior inconsistent statements is properly refused. *Carroll v. State* (1975), 263 Ind. 696, 338 N.E.2d 264.

The substance of defendant's tendered instructions numbered 1, 6, and 7 were covered by the court's own instructions. Instruction 1 recited that the jury has the right to determine the law and the facts. The court's instructions numbered 1, 2, and 28 informed the jury that they were the judge of both the law and the facts, that the jury may determine the law, and that all questions of fact are exclusively a determination for the jury to make. Instruction 6 recited the standard for circumstantial evidence. The substance of this instruction was covered by the court's instruction 37, which recited a detailed ex-

planation of the standard to determine the value of circumstantial evidence. Appellant's instruction 7 stated the factors a jury may consider to determine the weight and credibility to accord to a witness' testimony. The court's instructions 20 and 21 charged the jury that they were the judges of the credibility of witnesses and of the weight to be given to their testimony.

Defendant's tendered instruction 8 was not relevant to the issues presented at trial. This instruction recited that the jury may consider the habitual offender statute when evaluating the testimony of any witness, and then recited several provisions of the habitual offender statute. Several of the State witnesses had been granted immunity from prosecution in exchange for their testimony. Presumably defendant wished the jury to conclude that had the State witnesses not been granted immunity from prosecution they might have been prosecuted for the immunized offenses which in turn might have enabled the State to seek to have them sentenced as habitual offenders. However, the habitual offender statute is not a vehicle to test the credibility of witnesses.

Defendant also tendered instruction number 3, which recited that the "flight of an accused is a circumstance to be considered against him only in connection with other evidence of guilt, depending upon the conditions and the motive which prompted it. Flight alone will not support a conviction and this is particularly true when there is an explanation of a flight which is consistent with the hypothesis of innocence. An accused is entitled to benefit from the Jury's consideration of any explanation of his flight consistent with his innocence."

The court refused this instruction and charged the jury with the following in its stead: "Escape from jail where a person is confined awaiting trial, or concealment of identity, though not proof of guilt, is evidence of consciousness of guilt and thus of guilt itself and are circumstances which may be considered by you in connection with all the other evidence to aid you in

determining the question of guilt or innocence." This instruction has previously been approved by this Court. *Reno v. State* (1967), 248 Ind. 334, 228 N.E.2d 14; *Torphy v. State* (1940), 217 Ind. 383, 28 N.E.2d 70.

Defendant argues that the phrase, "... and thus of guilt itself", erroneously charged the jury that escape alone is proof of guilt. He maintains that this instruction is tantamount to telling the jury that since defendant fled the state and escaped from jail that he is guilty of the charges.

 Jury instructions must be considered in reference to each other when determining whether the trial court erred in its charge to the jury. *Richards v. State* (1985), Ind., 481 N.E.2d 1093. In this case, the court also instructed the jury that the existence of material facts may be established by circumstantial evidence and direct evidence. The jury was charged that circumstantial evidence would not warrant a conviction unless it was conclusive and excluded every reasonable hypothesis of innocence. Proof of circumstances consistent with the theory of defendant's guilt or the mere tendency of evidence to support a conclusion of guilt are not a sufficient basis for a guilty verdict.

 The court's instructions conveyed the notion that the jury may infer consciousness of guilt from the evidence of defendant's flight from the state or escape from the jail, but may not consider either the flight or the escape as sufficient evidence to prove an element of the crime. As such, this instruction essentially conforms to the standard flight instruction that evidence of flight is not proof of guilt but may be relevant as circumstantial evidence of guilt. *Smith v. State* (1984), Ind., 470 N.E.2d 1316. The jury was correctly charged that appellant's escape did not constitute proof of guilt, but could be considered by the jury as circumstantial evidence.

## VIII. Presumptive Sentence

Hansford argues that the trial court erred by sentencing him to the presumptive sentences for the burglary and robbery convictions. He maintains that the imposition of presumptive sentences was excessive and manifestly unreasonable because the trial court failed to consider his age, lack of a criminal record, and his past exemplary behavior.

 The trial judge need not state a basis for imposing the presumptive sentence. This Court assumes that the trial judge considered the factors listed in Ind. Code § 35-38-1-7(a) when he or she imposes the presumptive term. *Warner v. State* (1983), Ind., 455 N.E.2d 355.

 We will not adjust a sentence which is authorized by the statute unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Indiana Rules for Appellate Review of Sentences 2. A sentence is not manifestly unreasonable if any reasonable person could find the sentence appropriate for the particular offense and the offender. *Johnson v. State* (1983), Ind., 455 N.E.2d 932.

 The sentences imposed here correspond to the presumptive sentence under the statute. Ind.Code § 35-50-2-4 (Burns 1979). One factor which the trial court must consider when determining what sentence to impose for a crime is whether the victim of the crime was sixty-five years of age or older. We cannot find the sentences to be manifestly unreasonable when both of the victims were over sixty-five years of age and sustained injuries during the course of the robbery.

## IX. Consecutive Sentences

 Defendant argues that the trial court erred by ordering that the sentences for the confinement convictions be served consecutively to the sentences imposed for the robbery and burglary convictions. We agree.

The trial court considered "the pre-sentence report, the nature and circumstances of the crime committed, the risk that the defendant will commit another crime, the prior criminal record, and the character and

condition of the person." The court then imposed consecutive sentences despite its finding that there were no aggravating or mitigating circumstances.

When the trial court does not give any statement of reasons for the imposition of consecutive sentences or fails to satisfy the specificity requirement in its statement, the proper recourse is to remand with instructions that the trial court either enter specific findings that support the consecutive sentences, or, alternatively, resentence the appellant to concurrent terms. *Pillow v. State* (1985), Ind., 479 N.E.2d 1301. However, when the trial court states that it does not find any aggravating circumstances, the only recourse is for this Court to remand with instructions to vacate the order requiring consecutive sentences and to impose concurrent sentences instead. *Brown v. State* (1982), Ind., 442 N.E.2d 1109; *Powers v. State* (1982), Ind., 440 N.E.2d 1096. It is so ordered.

This cause is remanded to the trial court for sentencing corrections consistent with this opinion. In all other respects, the judgment is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.