**Foster O. BATTLE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3–1285–A–344.

Court of Appeals of Indiana, Third District.

Oct. 7, 1986.

Lonnie M. Randolph, East Chicago, Ill., for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

Foster O. Battle was charged with two counts of Dealing in Cocaine, a Class B Felony, and was convicted by a jury of one count. He appeals that conviction, raising five issues for our review:

I. Did the trial court err in denying Battle's motion for judgment on the evidence?

II. Did the State withhold exculpatory evidence which it had a duty to produce?

III. Did the trial court err in failing to declare a mistrial sua sponte due to jury deadlock?

IV. Was Battle's sentence manifestly unreasonable?

V. Did the trial court err in denying Battle a new trial based on newly discovered evidence?

We affirm.

### I.

### *Judgment on the Evidence*

■ Battle raised a defense of entrapment, and he argues that the State failed to present sufficient evidence to rebut it. As a result, he argues that the trial court erred in denying his motion for judgment on the evidence, which he made after the State's case in chief and renewed at the close of all the evidence.

Ind.Code 35–41–3–9 provides:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likelyto cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

When an entrapment defense is raised, this Court must make a two-part inquiry: (1) Did police officers or their agents initiate and actively participate in the criminal activity, and (2) Is there evidence that the accused was predisposed to commit the crime so that it was not solely the idea of the police officials. *Henrichs v. State* (1983), Ind., 455 N.E.2d 599, 600. In reviewing the sufficiency of the evidence of predisposition, we will neither reweigh the evidence nor judge the credibility of witnesses. We will look only to the evidence most favorable to the State, together with reasonable inferences to be drawn therefrom, and if there is evidence of probative value to support the findings of predisposition, we will not disturb the verdict. *Id.* at 601.

■ Circumstantial evidence, including evidence of events at the time of the sale or delivery, may be considered on the issue of predisposition. *Schlabach v. State* (1984), Ind.App., 459 N.E.2d 740, 741; *Voirol v. State* (1981), Ind.App., 412 N.E.2d 861, 863. Such circumstances include the following: familiarity with drug terminology; knowl-

edge of prices and quantities of controlled substances; familiarity with a source of supply; and multiple sales to an officer or his agent. *Schlabach, supra,* 459 N.E.2d at 741; *Sowers v. State* (1981), Ind.App., 416 N.E.2d 466, 469; *Voirol, supra,* 412 N.E.2d at 863.

The evidence most favorable to the State shows that Detective Andrew Jury, of the Gary Police Department, began watching Battle's house around March 30, 1983, in response to complaints of alleged drug trafficking there. Jury testified that he observed people coming and going at Battle's home, staying for an average of from five to ten minutes. As a result of his surveillance, Jury and a confidential informant, a neighbor of Battle's, went to Battle's home on March 30, 1983. When the informant told Battle they wanted to buy a bag of "herb," or marijuana, Battle asked him who Jury was. The informant told Battle that Jury was a friend of his, to which Battle responded, "Man, I don't like this, but okay." Battle made Jury wait outside the house while he and the informant went inside to get the marijuana. When they returned, Jury asked Battle if he knew where Jury could get some "coke," or cocaine. Battle told him that he would have some in about a week.

On April 12, 1983, Jury and the informant returned to Battle's house and made a second marijuana purchase. Jury again asked Battle where he could get some coke, and Battle told him, "Right here." Battle told him he had $25 and $50 packages, and Jury told him he would be back.

Jury and the informant returned to Battle's home on April 20, 1983. When Jury told Battle he wanted to "cop a fifty center of coke," Battle responded by inviting the two men into his kitchen. Jury gave Battle $50 and Battle took down what appeared to Jury to be a cookie jar, with packages inside marked "25" and "50". He gave Jury a package marked "50", and Jury and the informant left. On April 23, 1983, Jury returned to Battle's home without his informant and bought another $50 package of cocaine. It was for this second cocaine sale that Battle was convicted.

■ There was sufficient evidence from which the jury could infer that Battle was predisposed to deal in cocaine. There was evidence that he was familiar with drug terminology and that he knew how cocaine was priced and packaged. Battle testified that it took him only a few days to obtain the cocaine he sold to Jury. Although the jury convicted Battle only for the second cocaine sale, there was evidence of another sale three days earlier. There was also evidence that Battle had sold two packages of marijuana to Jury, and he admitted that he had been delivering marijuana to his friends for about ten years.

■ The trial court did not err in denying Battle's motion for judgment on the evidence. Battle makes a related argument that the trial court erred in failing to instruct the jury that "where the evidence established no more than a sale or delivery of contraband made in response to a solicitation by government agents as a party [sic] of a plan initiated by the government to reveal a violation of the criminal law, a reasonable doubt regarding entrapment existed as a matter of law." Although Battle's attorney orally requested such an instruction (Record, at 584–85), he did not tender it in writing to the trial court, and has thus failed to preserve any error for our review. *Cox v. State* (1985), Ind., 475 N.E.2d 664, 666–67.

■ Even had Battle preserved the issue for review, we find no error. The jury was given three separate instructions on entrapment, including the following:

### INSTRUCTION NO. 10

When the question of entrapment is raised, there must be a two part inquiry:

1. Did police officers or their informants initiate and actively participate in the criminal activity;

2. Is there evidence that the accused was predisposed to commit the crime so that the proscribed activity was not solely the idea of the police officials?

If the evidence shows the requisite police activity absent any showing of predisposition on the part of the accused, entrapment as a matter of law has been established.

(Record, at 65). Because the substance of Battle's requested instruction was adequately covered by the trial court's instructions, refusal to give Battle's requested instruction was proper. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083, 1092.

## II.

### *Evidence*

At Battle's sentencing hearing and the hearing on his motion to correct errors, the State's confidential informant testified in Battle's behalf. At the latter hearing, he testified that he became an informant after he was arrested himself, because Detective Jury had made him "a proposition." He stated that he was paid for his work with Detective Jury, as well. He said that Detective Jury jailed him after he refused to go with him to Battle's home for the second cocaine purchase, and that he was testifying for Battle because Battle was "not a drug dealer." Finally, the informant testified to various details concerning his work with Detective Jury that conflicted with Jury's trial testimony, and stated that he had arranged the cocaine purchase that Jury made on April 23, 1983.

Battle argues that the informant's testimony was exculpatory evidence which the State had a duty to disclose under *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In *United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, the Supreme Court outlined three types of cases in which this duty of disclosure comes into question: (1) cases in which undisclosed evidence demonstrates that the State's case included perjury; (2) cases in which the defendant has made a pre-trial request for specific evidence; and, (3) cases in which the defendant made only a general request for discovery, or no request at all.

Because Battle made only a general request for discovery pursuant to *State ex rel. Keller v. Criminal Ct. of Marion County* (1974), 262 Ind. 420, 317 N.E.2d 433, we will apply the least stringent review standard from *Agurs:*

"[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."

*Agurs, supra,* 427 U.S. at 112–13, 96 S.Ct. at 2401–02 (footnote omitted).

Indiana has recognized that the State has a duty to disclose when a "deal," such as payment or grants of immunity, has been made with a State's witness. The State's informant in this case did not testify at trial, however, so this requirement does not apply.

As for other types of information which the informant could have provided Battle before trial, we would note first that Battle knew the name and address of the informant, who was a neighbor of his, and he could have subpoenaed him. The information was as easily accessible to Battle as to the State. *See Harris v. State* (1981), Ind., 425 N.E.2d 112, 117. In any event, the bulk of the informant's testimony was merely impeaching of Detective Jury's trial testimony, in that he recounted details of their work together that conflicted with Jury's testimony. The informant did not dispute, however, that Battle had sold cocaine to him and Jury on April 20, 1983.

The informant's assertion that Battle was "not a drug dealer" goes to the question of Battle's predisposition, and is merely cumulative of other testimony at trial that Battle was not predisposed to deal in cocaine. Neither cumulative evidence nor impeachment evidence is ever likely to create a reasonable doubt that would not otherwise exist under the *Agurs* "type III" standard, *see Richard v. State* (1978), 269 Ind. 607, 382 N.E.2d 899, 908,

*cert. denied,* 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781. The informant's statement that he, a friend and neighbor of Battle's, set up the purchase made on April 23, 1983 also goes to the question of Battle's predisposition to deal in cocaine. In light of the evidence that Battle had delivered cocaine to Jury and the informant once before, and that he went ahead and delivered it to Jury without the informant present on April 23, we cannot say, however, that the informant's testimony creates a reasonable doubt where none would otherwise have existed. The State had no duty to provide the evidence to Battle before trial.

### III.

#### *Deadlocked Jury*

Battle contends that the trial court erred in not declaring a mistrial because of jury deadlock. Before voir dire, one of the prospective jurors indicated that his religious beliefs would prohibit him from deliberating past midnight on Friday if the trial should last that long. After the completion of the evidence, the jury began its deliberations at 4:33 p.m. on Friday, February 21, 1985, and returned its verdict at midnight the same night. The jury found Battle not guilty on Count I, involving the alleged delivery of cocaine on April 20, 1983, but found him guilty on Count II, for the April 23rd delivery. The jury was polled and each juror indicated that the verdict was his own.

Battle alleges that at 11:35 p.m. the jury was summoned into open court, at which time they indicated that they had not reached a verdict. At that time, Battle alleges, the juror with the religious conflict reminded the judge that he could not deliberate beyond 12:00 a.m. Battle alleges that he moved for a mistrial, which was denied, and that the jury was returned to the jury room over his objection. He argues that the split verdict, guilty on Count II and not guilty on Count I, amounts to a compromise verdict due to jury deadlock and time pressure from one juror's religious convictions.

■ The general rule in Indiana is that the length of time permitted for jury deliberation is within the sound discretion of the trial court. Thus, a conviction will not be reversed when the jury reports it is unable to reach a verdict, is directed to deliberate further, and later returns a verdict, unless the trial court has abused its discretion in some way or the record indicates that the verdict may have been coerced. *Decker v. State* (1979), 179 Ind. 472, 386 N.E.2d 192, 199.

■ Although the record indicates that prior to voir dire a prospective juror indicated that his religious beliefs would prohibit his deliberating beyond midnight on Friday, and further indicates that the jury deliberated from 4:33 p.m. until midnight Friday, February 21, 1985, there is nothing in the record to indicate that the jury was deadlocked at 11:35 p.m. There is nothing to indicate that the jury was summoned into court at that time and then sent back to deliberate further, nor is there any record of Battle requesting a mistrial. Battle has the burden of producing for this Court a record which supports his allegation of error. *Id.* Absent this information, we are in no position to determine whether the trial judge abused his discretion or whether the jury was coerced in reaching its verdict. *Id.* We are unable to address the issue on the merits.

### IV.

#### *Sentencing*

Battle received a sentence of six years, with four years suspended, so that he would serve an executed sentence of two years followed by two years probation. IC 35-50-2-5 provides as follows:

A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,000).

Thus, the trial judge reduced the presumptive sentence by four years, the maximum allowable, and suspended two-thirds of the remaining sentence. Battle argues, however, that the trial judge abused his discre-

tion in sentencing him to anything beyond probation.

 Increasing or reducing the presumptive sentence due to aggravating or mitigating circumstances is within the discretion of the trial court. *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, 1104–05, *cert. denied,* — U.S. ——, 106 S.Ct. 106, 88 L.Ed.2d 86. The record of the sentencing hearing indicates that the trial court considered the factors that IC 35–38–1–7 requires it to consider. The trial court also found the following in mitigation:

1. The Defendant has no history of delinquencey [sic] or criminal activity.
2. The Defendant is likely to respond affirmatively to probation or short-term imprisonment because the Defendant is 37 years old, has been steadly [sic] employed for 17 years at the same job, and has three (3) dependent children.

(Record, at 82). In aggravation, the trial court found the following:

1. The evidence at Trial was that the Defendant was involved in other transctions [sic] involving controlled substances before the transaction which led to his arrest herein.

(Record, at 83).

At the sentencing hearing, Battle presented testimony from a police officer and two probation officers who stated that they believed he would be a good candidate for probation. He also presented evidence that he provided support for his three children, as well as the families of his mother and sister. Battle argues that in light of this evidence sentencing him to anything beyond probation was an abuse of discretion.

 We will not assess or reweigh the trial court's findings regarding aggravating and mitigating circumstances. *Bish v. State* (1981), Ind., 421 N.E.2d 608, 620. We will not revise a sentence which is authorized by statute unless it is manifestly unreasonable, so that no reasonable person could find it appropriate to the particular offense and offender. *Id.,* Ind. Rules of Procedure, Appellate Review of Sentences Rules 1, 2. We cannot say that Battle's

executed sentence of two years, with two years probation, is manifestly unreasonable. The executed portion of Battle's sentence is eight years less than the presumptive sentence for the offense for which he was convicted. We find no error in the sentencing.

## V.

### *Newly Discovered Evidence*

 Battle argues that the testimony presented by the confidential informant at the hearing on Battle's motion to correct errors, discussed under Issue II above, entitles him to a new trial based on newly discovered evidence. The granting of a new trial on this basis is within the sound discretion of the trial court. *Lottie v. State* (1983), Ind., 444 N.E.2d 306, 308. The standards to be applied in considering such a request were stated in *Emerson v. State* (1972), 259 Ind. 339, 287 N.E.2d 867:

> "An application for a new trial, made on the ground of newly discovered evidence, must be supported by affidavit and such affidavit or affidavits must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Cansler v. State* (1972), [258] Ind. [450], 281 N.E.2d 881; *Tungate v. State* (1958), 238 Ind. 48, 147 N.E.2d 232. In deciding whether a piece of newly discovered evidence would produce a different result the presiding judge may properly consider the weight which a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case."

*Id.,* 287 N.E.2d at 871–72.

 Battle does not show that due diligence was used to discover the evidence in

time for trial. He knew the informant's name and address, and in fact the informant was a friend and neighbor of Battle's. Battle offers no reason why, with due diligence, he could not have obtained the informant's testimony in time for trial.

Also, as we discussed under Issue II, much of the informant's testimony is of either a cumulative or an impeaching nature. Taking it together in light of all the facts and circumstances, we cannot say that it would probably produce a different result. The evidence does not rise to the level requiring a new trial.

We affirm.

HOFFMAN and GARRARD, JJ., concur.