**Walter McMANNIS, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 41A01–8605–CR–138.**

Court of Appeals of Indiana, First District.

Oct. 30, 1986.

Rehearing Denied Dec. 10, 1986.

Marcus C. Emery, Bowman, Tucker & Emery, Indianapolis, Tom G. Jones, Jones, Loveall & Johnson, Franklin, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Walter McMannis (McMannis), appeals his convictions by a Johnson Circuit Court jury for conspiracy to commit theft, a Class A misdemeanor, and theft, a Class D felony.

We affirm.

## STATEMENT OF THE FACTS

Speedway Police Officer A.D. Mabrey was involved in an automobile accident while on duty in May 1978. Subsequently, Mabrey was approached by an attorney, James Fierek, who asked him if he, Fierek, could "do anything for him." Mabrey consented to Fierek's offer of representation, even though Mabrey had not been injured in the accident nor missed any time from work. Fierek asked Mabrey for one of Mabrey's paycheck stubs for the purpose of wage verification. Fierek then sent a letter to the insurance company, whose insured was responsible for the accidents, demanding settlement. Included with the letter were the paycheck stub and a medical report detailing Mabrey's "injuries." The report was prepared by McMannis, an Indianapolis physician, although McMannis had never examined Mabrey. Fierek eventually settled the claim for $900.00. Mabrey received $420.00, and Fierek told him that it represented two-thirds of the total recovery, less the $110.00 cost of the medical report.

Another Speedway Police Officer, Mike Morgan, was involved in an automobile accident while on duty in July 1981. Morgan was referred to Fierek by his fellow officers. Fierek also obtained a paycheck stub from Morgan and sent Morgan to be examined by McMannis. Again, based upon McMannis' medical report and the wage verification, Fierek was able to obtain a favorable settlement for Morgan from an insurance company.

A third Speedway Police Officer, Thomas Pierce, was involved in a traffic accident while on duty in August 1981. Like Mabrey, Pierce was approached by Fierek with an offer of representation. Pierce, suspicious because he had not been injured in the accident nor had he missed any time from work, contacted the office of the Marion County Prosecutor. Investigators there directed Pierce to tape-record his conversations with Fierek. Fierek sent Pierce to be examined by McMannis. Wired with a microphone-transmitter by the investigators, Pierce went to McMannis' office for an examination, which was tape-recorded. McMannis sent Fierek a medical report. Fierek included it, along with a paycheck stub provided by Pierce, with a letter demanding a settlement, which was sent to the insurance company whose insured had been responsible for the accident. This claim was settled for $1,850.00, and McMannis' bill for $90.00 was paid by Fier-

ek from the proceeds. Pierce turned his share over to the investigators.

Based upon the tape-recorded examination, police obtained a search warrant for McMannis' office, seeking the medical records relating to the treatment of Mabrey and Pierce, as well as the correspondence and billings sent to Fierek concerning the two officers. The search warrant was executed on February 12, 1982. McMannis' office is located in the same building as his home, the two being separated by a door. During the search, the police went from the office, through the doorway, into a spare bedroom that adjoins the office. There, they found a letter, typed on Fierek's letterhead stationery and signed by Fierek, requesting McMannis to prepare a medical report and a bill of $110.00 concerning A.D. Mabrey. The letter also described Mabrey's injuries.

Fierek and McMannis were charged by a grand jury in a seven-count indictment. Four of the counts pertain to McMannis. Count I charged him with conspiracy to commit theft from three insurance companies by writing allegedly false medical reports on Officers Morgan, Mabrey and Pierce. Counts III, V and VII charged him with theft by submitting the allegedly false medical reports on Officers Pierce, Mabrey and Morgan, respectively. Fierek pled guilty to one count of theft prior to trial pursuant to a plea agreement.

The three-day jury trial began on July 22, 1985. In addition to Officers Mabrey, Morgan, and Pierce, witnesses for the State included claims adjusters from the three insurance companies that had paid the claims advanced by Fierek. The adjusters testified that personal injury claims for non-fracture, or "soft tissue," injuries involving relatively small amounts are considered "nuisance claims" by insurance companies. As such, they are usually paid without much investigation by the adjuster, especially when accompanied by a doctor's medical report, as they were here.

Officer Morgan testified that McMannis examined his mobility and range of motion,

but prescribed no medication, and Morgan only saw McMannis once.

Officer Mabrey testified that he never saw McMannis, whereupon the State offered the letter, written by Fierek, requesting a medical report and bill from McMannis, that was obtained in the search. McMannis moved to suppress the letters, arguing that the search warrant limited the search to his office, but the letter had been taken from a spare bedroom in his house. The State responded that the spare bedroom was used regularly for office purposes, justifying the search. The trial court denied the motion to suppress, and the letter was admitted.

Officer Pierce, who had worn a microphone-transmitter during his examination by McMannis, testified that the examination lasted only 7–10 minutes, and consisted only of a blood-pressure check. A transcript of Pierce's examination, which had been tape-recorded, was admitted into evidence. The transcript consists of a conversation between Pierce, McMannis, and McMannis' wife, Ella, who is also McMannis' receptionist, concerning the circumstances of Pierce's accident.

Fierek testified for the State, pursuant to a plea agreement. While he admitted his own culpability in the events, he denied that he and McMannis had a prior agreement to work in concert. Fierek stated that he sent the officers to McMannis because McMannis' office was near his own, McMannis did not require appointments or advance payment for services, and McMannis promptly furnished the reports.

At the conclusion of the State's case-in-chief, the trial court granted judgment on the evidence in favor of McMannis on Counts I and VII, relating to Officer Morgan.

McMannis testified that he examined both Mabrey and Pierce. He also stated that there was no agreement or plan between himself and Fierek, and that he had no knowledge of what Fierek intended to do with the medical reports, since McMannis billed and was paid by Fierek directly.

The jury found McMannis innocent on Counts I and III, relating to Officer Pierce, but guilty of theft and conspiracy to commit theft, Counts V and I, relating to Officer Mabrey. The trial court sentenced McMannis to one year of imprisonment, but suspended the sentence and placed him on one year of probation. McMannis was also fined $2,000.00 on each count.

On January 21 of this year, McMannis filed his Motion to Correct Error which was denied on March 7, 1986, whereupon McMannis instituted this appeal.

## ISSUES

The issues before us are as follows:

I. Whether the trial court erred in denying McMannis' motion to suppress the letter seized from a bedroom of his house, when the search warrant was authorized only for his office.

II. Whether the evidence is sufficient to support McMannis' convictions for theft and conspiracy to commit theft.

## DISCUSSION AND DECISION

ISSUE I: *Motion to Suppress*

McMannis argues that the trial court erred in denying his motion to suppress because the letter was seized from a spare bedroom adjoining his office, although the warrant limited the search to his office.

A search warrant must particularly describe the place to be searched and the person or thing to be seized. U.S. CONST. amend. IV; Ind. CONST. art. I, sec. 11. McMannis concedes that the search warrant meets this standard, but claims that the police officers exceeded the scope of the warrant in expanding their search to a spare bedroom of his house and seizing a letter found there.

In considering whether an unreasonable search and seizure has occurred, we do not weigh the evidence, but examine the evidence most favorable to the ruling. *Holt v. State* (1985), Ind., 481 N.E.2d 1324.

■ The record shows that McMannis' office and home are located in the same building. The spare bedroom, from which the letter was obtained, adjoins the office and is separated by a door. Furthermore, McMannis' wife and receptionist, Ella, testified at trial. On cross-examination, she stated how the spare bedroom was used. The colloquy is as follows:

"Q. How did that document get to be in the bedroom?

A. Well, like I say, when I wanted—Doc to do anything with anything, I'd put it on the bed, so he'd know what he was to do next. They'd [the police] been raisin' cain about this stuff, so I got it out and put it in there.

Q. Where did you get it from?

A. From the files.

Q. The files in this room? The record room?

A. Sure, yeah.

            *    *    .    *    *    *    *

Q. But, it's your testimony that it was a common practice for you to lay things in there that you wanted him to take a look at?

A. Yes, sir.

Q. Like, if he was to review a file for purposes of uh—of uh makin' a report of some kind uh—

A. Yes, sir, they're still there—

Q. ... write an opinion letter or—

A. Yes, sir.

Q. That's where you would—that's where you would put the files?

A. Yes, sir."

*Record* at 608–610.

We believe this evidence is sufficient to sustain the trial court's denial of the motion to suppress on the basis that the spare bedroom was regularly used for office purposes.

ISSUE II: *Insufficient Evidence*

■ McMannis also argues that the evidence is insufficient to support his convictions.

When a challenge to the sufficiency of the evidence is raised, we do not weigh the evidence or judge the credibility of the witnesses. Rather, we review only that evi-

dence most favorable to the State and any reasonable inferences which may be drawn therefrom, and if there is substantial evidence of probative value to support each element of the offense beyond a reasonable doubt, then the judgment must be affirmed. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083.

A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony and either the person or the person with whom he agreed performed an overt act in furtherance of the agreement. IND. CODE 35–41–5–2. However, the State is not required to prove the existence of a formal, express agreement; it may be inferred from the acts committed and the circumstances surrounding the defendant's involvement. *Sutton v. State* (1986), Ind. App., 495 N.E.2d 253.

McMannis asserts that while the evidence may establish that he was aware that his medical reports were false, it does not follow that he was aware that Fierek would use those reports to commit theft from insurance companies. Therefore, he concludes, without proof that he knew that Fierek intended to commit theft, there is no evidence from which it can be inferred that he intended to commit theft or to agree to commit theft. We disagree.

At trial, a letter from Fierek to McMannis, the seizure of which was discussed above, was admitted into evidence. Typed under Fierek's legal letterhead, it reads as follows:

"November 11, 1978
Walter McMannis, M.D.
3444 West Washington Street
Indianapolis, Indiana 46222
Attn: Ella
Dear Ella:
    I need a medical report and medical bill of about $110.00 on the following individual:
    A.D. Mabrey, Speedway Police Officer.
    Accident Date: Sunday, May 14, 1978. Officer Mabrey received a sore back and neck. I will await your medical report and medical bill.

Very truly yours,
/s/ James H. Fierek
James H. Fierek
JHF/jp
P.S. I need the medical report on Ruth Ann Frye also."
*Record* at 631.

The record also shows that McMannis sent a medical report to Fierek, which contains McMannis' conclusion that Mabrey suffered from a stiff neck and sore back. Included with this medical report is a bill for $110.00. However, Officer Mabrey testified that, not only was he not injured, he was never examined by McMannis.

Similarly, McMannis submitted a medical report on Officer Pierce for similar injuries, although Pierce testified that McMannis never touched him during the examination, except to check his blood pressure.

Based upon this pattern of conduct, we believe the jury was entitled to infer that McMannis and Fierek had an agreement to commit theft and that McMannis had the intent to commit theft.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.